UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA         :
                                 :      Hon. Esther Salas
         v.                      :
                                 :      Criminal No. 12-298
                                 :
FARAD ROLAND                     :
                                 :


BRIEF OF THE UNITED STATES OF AMERICA
IN SUPPORT OF ITS MOTION TO DISQUALIFY THOMAS AMBROSIO, ESQ.


PAUL J. FISHMAN
UNITED STATES ATTORNEY
970 Broad Street
Newark, New Jersey 07102
(973) 645-2700


On the Brief:

ROBERT L. FRAZER
Assistant U.S. Attorney
ROBERT J. FEITEL
Special Assistant U.S. Attorney
COURTNEY A. HOWARD
Assistant United States Attorney

The United States of America respectfully submits this Memorandum of Law in support of its motion to disqualify Thomas Ambrosio, Esq., from continuing to represent defendant Farad Roland in this matter. Disqualification is necessary because Mr. Ambrosio has actual and potential conflicts of interest that prevent him from providing effective representation to two of his current clients,[1] defendant Roland and Witness 1.[2]

## STATEMENT OF FACTS & PROCEDURAL HISTORY

The defendant is charged in a multi-count Second Superseding Indictment with, among other charges, racketeering, racketeering conspiracy, and capital-eligible murders.  On or about May 17, 2012, Donna Newman was appointed as CJA counsel for Roland.  After over three years of representation, Roland requested new counsel due to a dispute with Ms. Newman.[3]  The Court granted his request on or about September 2, 2015.

---

[1]  The Government asserts that Mr. Ambrosio's representation of the witness is ongoing as the witness has yet to testify and would require representation regarding the cooperation agreement until the terms of that agreement had been fulfilled, *i.e.* testifying truthfully at any and all proceedings, including grand jury and trial proceedings. However, the same legal analysis applies whether the court finds his representation to be ongoing or not.

[2]  In a telephone conference with the Court, Mr. Ambrosio agreed not to divulge the name of the witness to his co-counsel pending the decision on this motion due to the potential security risks to the witness and his family.

[3] The Government was not made aware of the exact nature of the dispute, as the reasons for Ms. Newman's removal were presented to the Court *ex parte.*

On September 17, 2015, the Court appointed Mr. Ambrosio to replace Ms. Newman as Roland's trial counsel.

Approximately three months later, on December 11, 2015, the Government alerted the Court to information about a conflict of interest that it neglected to learn at the time Mr. Ambrosio was appointed to represent Roland, but that it discovered during the course of preparing for trial. Witness 1, who has pled guilty to various charges in the Superior Court of New Jersey, is cooperating with this Office in connection with two cases— including this one.  In or around March 2014, a Magistrate Judge of the District Court of New Jersey appointed Mr. Ambrosio to represent Witness 1 in relation to Witness 1's cooperation with the Government.  On or about March 26, 2014, after consulting with Mr. Ambrosio, Witness 1 entered into a written cooperation agreement with the Government.[4]  On or about April 1, 2014, Witness 1 testified before a Grand Jury in the District of New Jersey.[5]

As part of Witness 1's ongoing cooperation, Witness 1 will be a witness for the Government in the trial of Roland.  Despite representations by defense counsel at the conference on December 15, 2015 that there is no conflict here, the law, the New Jersey Rules of Professional Conduct, and the ABA

---

[4] Witness 1 was also represented by a state public defender, who also signed the cooperation agreement.

[5] That Grand Jury testimony related to Witness 1's cooperation in a separate matter with this Office.

Code of Professional Responsibility establish that, at a minimum, a serious potential conflict exists.  Therefore, Mr. Ambrosio should be disqualified from representing Roland.

### LEGAL ARGUMENT

### A CONFLICT OF INTEREST EXISTS DUE TO MR. AMBROSIO'S REPRESENTATION OF BOTH WITNESS 1 AND DEFENDANT ROLAND

"The Sixth Amendment guarantee of effective assistance of counsel includes two correlative rights, the right to adequate representation by an attorney of reasonable competence and the right to the attorney's undivided loyalty free of conflict of interest." *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir. 1988).  As the Third Circuit has noted, "[t]he attorney's undivided loyalty is required because the type of effective 'assistance of counsel' the Sixth Amendment guarantees a criminal defendant is that which puts the government to its proofs in an adversarial manner, and for this counsel free of conflicts of interest is necessary." *United States v. Moscony*, 927 F.2d 742, 748 (3d Cir. 1991) (citing *United States v. Cronic*, 466 U.S. 648, 656, 656 n.15, 661 n.28 (1984)).

A conflict of interest can be either potential or actual.  A potential conflict of interest exists "if the interests of the defendant *could* place the attorney under inconsistent duties in the future." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004).  An actual conflict of interest exists "when the attorney's

3

representation of the defendant is impaired by loyalty owed to a prior client."
*Id.*  Thus, an actual conflict of interest arises "whenever an attorney's loyalties
are divided." *United States v. Stewart*, 185 F.3d 112, 121 (3d Cir. 1999).  An
attorney's loyalties may be divided "due to concurrent or prior representation of
another client who is a co-defendant, a co-conspirator, or a government
witness." *Moscony*, 927 F.2d at 749; *see also* N.J. Rule Prof. Conduct 1.7(a)
(defining a "concurrent conflict of interest" as a situation in which "there is a
significant risk that the representation of one or more clients will be materially
limited by the lawyer's responsibilities to another client, [or] a former client . .
."). An actual conflict of interest occurs if "'the defendants' interests diverge
with respect to a material factual or legal issue or to a course of action'" such
that the attorney finds himself in the untenable position of serving two clients
with incompatible needs.  *Gambino*, 864 F.2d at 1070 (citations omitted).

Here, Mr. Ambrosio labors under clear conflicts of interest due to his
representation of Witness 1—who is cooperating with the Government, and as
a part of that cooperation, will testify against defendant Roland at trial in this
matter—and his concurrent representation of defendant Roland.  Given that
Mr. Ambrosio was appointed to represent Witness 1 in connection with his
cooperation agreement with the Government, and given that the cooperation is
ongoing and will include Witness 1's testimony at Roland's trial, Mr. Ambrosio's
representation of Witness 1 is current.  Thus, Mr. Ambrosio represents two

clients whose interests diverge: he represents a cooperating witness who has an interest in properly preparing for truthful testimony and, on the other hand, he represents a criminal defendant facing that testimony. This is a clear conflict of interest. *See* N.J. Rule Prof. Conduct 1.7(a); ABA Model Rules of Prof. Conduct 1.7(a).

Even assuming, *arguendo*, that Witness 1 receives new counsel and Mr. Ambrosio's representation of Witness 1 ceases, the conflict of interest still exists. Rule 1.9(a) of New Jersey's Rules of Professional Conduct provides that "[a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which the client's interests are materially adverse to the interests of the former client unless the former client gives informed consent in writing." *See also* ABA Model Rules of Prof. Conduct 1.9(a). Here, Mr. Ambrosio would be representing Roland in "the same or a substantially related matter," *i.e.* the trial in which Witness 1 is a cooperating witness, testifying adverse to Roland.

Moreover, an attorney owes certain duties of confidentiality to former clients—and access to privileged information is conclusively presumed once an attorney-client relationship has been established. *United States v. Provenzano*, 620 F.2d 985, 1005 (3d Cir. 1980). Rule 1.6(a) of New Jersey's Rules of Professional Conduct provides that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after

5

consultation, except for disclosures that are impliedly authorized in order to carry out the representation." *See also Moscony*, 927 F.2d at 748 (describing the "ethical precept[]" that a "client has a right not to have her communications with her attorney revealed"). Similarly, Rule 1.9(c) states that a "lawyer who has formerly represented a client in a matter . . . shall not thereafter: (1) use information relating to the representation to the disadvantage of the former client, except as these Rules would permit or require with respect to a client, or when the information has been generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client." This duty of confidentiality creates a serious actual conflict of interest when an attorney is called upon to cross-examine a witness who was previously represented by the attorney. *See Moscony*, 927 F.2d at 750 (internal citations omitted) ("an attorney who cross-examines former clients inherently encounters divided loyalties"); *United States v. Voigt*, 89 F.3d 1050, 1078 (3d Cir. 1996) ("Since there was a strong possibility that [the witness] might face cross-examination by a former attorney, there was a serious potential for a conflict of interest which . . . warranted disqualification.").

Here, Mr. Ambrosio has ethical obligations not to reveal client confidences from his representation of Witness 1, but on the other hand, he owes a duty to Roland to represent him vigilantly and zealously. When Witness 1 takes the stand to testify against Roland, Mr. Ambrosio would be in an

untenable position; his loyalties would be divided, as "an attorney who cross-examines former clients inherently encounters divided loyalties." *Moscony*, 927 F.2d at 750.  For these reasons, an actual conflict of interest—or at a minimum a potential conflict of interest—exists, warranting disqualification.

## MR. AMBROSIO SHOULD BE DISQUALIFIED FROM HIS FURTHER REPRESENTATION OF ROLAND, REGARDLESS OF ANY PROFFERED WAIVERS

Because there is a conflict of interest due to Mr. Ambrosio's representation of Witness 1 and defendant Roland, Mr. Ambrosio should be disqualified from further representation of Roland and Witness 1—regardless of any waivers of the conflict of interest.  In order to even consider proceeding with Mr. Ambrosio's representation, waivers would be needed from both Witness 1 and Roland.  *See* N.J. Rule Prof. Conduct 1.7(b), 1.9(a).  In *United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978), the Third Circuit suggested the following form of inquiry:

> [T]he district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections. It is, of course, vital that the waiver be established by 'clear, unequivocal, and unambiguous language.'

*Id.* at 1181 (citing *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975)).

But even if both Witness 1 and Roland agree to waive any actual or potential conflict, and even if the Court creates a clear record that the waivers are knowing and voluntary, the Court has the discretion to reject the waiver. *See Stewart*, 185 F.3d at 122 (citing *Wheat v. U.S.,* 486 U.S. 153, 164 (1988), and stating "a district court has discretion to disqualify counsel if a potential conflict exists even where the represented parties have waived the conflict"). The Third Circuit has made clear that district courts have a substantial institutional concern when evaluating conflicts of interest and any waivers of conflict-free representation. The Third Circuit has explained that:

> the trial court has an institutional interest in protecting the truth-seeking function of the proceedings over which it is presiding by considering whether the defendant has effective assistance of counsel, regardless of any proffered waiver. Moreover, to protect the critically important candor that must exist between client and attorney, and to engender respect for the court in general, the trial court may enforce the ethical rules governing the legal profession with respect both to client-attorney communications and to conflict-free representation, again regardless of any purported waiver. Finally, the court has an independent interest in protecting a fairly-rendered verdict from trial tactics that may be designed to generate issues on appeal.

*Moscony*, 927 F.2d at 749 (footnote omitted). This is particularly so given the standard of review applied to post-conviction claims of ineffective assistance based on the existence of an actual conflict of interest. Ordinarily, under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant is required to

8

demonstrate prejudice to prevail on a claim of ineffectiveness.  But this is not

so when counsel is burdened by an actual conflict of interest because prejudice

is presumed where an actual conflict exists and results in an adverse effect on

counsel's performance.  *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980); *see

also Gov't of Virgin Islands v. Zepp*, 748 F.2d 125 (3d Cir. 1984);

*United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002); *Stoia v. United States*,

22 F.3d 766, 770-71 (7th Cir. 1994).

     As a result, the Supreme Court has held that a district court "must be

allowed substantial latitude in refusing waivers of conflicts of interest not only

in those rare cases where an actual conflict may be demonstrated before trial,

but in the more common cases where a potential for conflict exists which may

or may not burgeon into an actual conflict as the trial progresses."  *Wheat v.

U.S.*, 486 U.S. 153, 163 (1988).  Indeed, the Supreme Court has acknowledged

the significant difficulty of attempting to predict all of the hypothetical pitfalls

that the conflict of interest could create as trial progresses:

> Unfortunately for all concerned, a district court must pass on the issue
> whether or not to allow a waiver of a conflict of interest by a criminal
> defendant not with the wisdom of hindsight after the trial has taken
> place, but in the murkier pre-trial context when relationships between
> parties are seen through a glass, darkly.  The likelihood and dimensions
> of nascent conflicts of interest are notoriously hard to predict, even for
> those thoroughly familiar with criminal trials.  It is a rare attorney who
> will be fortunate enough to learn the entire truth from his own client,
> much less be fully apprised before trial of what each of the Government's
> witnesses will say on the stand.  A few bits of unforeseen testimony or a
> single previously unknown or unnoticed document may significantly shift
> the relationship between multiple defendants.  These imponderables are

9

> difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.

*Wheat*, 486 U.S. at 162-63.

Accordingly, as the Third Circuit noted in *Moscony*, "the presumption in favor of a defendant's counsel of choice" can be overcome, "not only when an actual conflict is found, but when there is 'a showing of a serious potential for conflict.'" *Moscony*, 927 F.2d at 750 (*Wheat*, 486 U.S. at 164).

The Government submits that the Court should not allow any proffered waivers of the conflict of interest because of the significant potential—and even likely—hazards of allowing conflicted representation in this case. For instance, Roland's consent to having Mr. Jasper, his learned counsel, substitute for Mr. Ambrosio, his trial counsel, during the cross-examination of Witness 1 is not absolute. Roland could withdraw his consent and, in the midst of trial, request that Mr. Ambrosio cross-examine Witness 1. Such a request, if denied, might cause a serious issue on appeal or force the court to declare a mistrial as arguably an actual conflict would then arise. Permitting Roland to, in effect, have the power to cause a mistrial or a reversal of his conviction is untenable, but a real risk should the court accept the waivers and deny the Government's motion. Another troubling scenario involves the potential for Witness 1 to testify to something that Mr. Ambrosio believes is untruthful based on prior privileged conversations between Mr. Ambrosio and Witness 1. Consequently,

10

Mr. Ambrosio would be left in the untenable position of having to either suborn perjury or cross-examine his own client with conflicting information obtained through a privileged communication.[6]  Mr. Ambrosio would be required to remain silent due to his ongoing duty to protect privileged communications with Witness 1, leaving him ineffective in his duties to Mr. Roland. A further scenario involves Mr. Ambrosio's potential to be called as a witness for the Government should Witness 1's credibility be challenged regarding his motives to testify, his understanding of the cooperation agreement, the timing of his signing the cooperation agreement, or the benefits he is to receive from the Government, all areas defense counsel typically explore when conducting cross-examination of a Government cooperator.

Further, it is possible that the defense would wish to call Witness 1 as a defense witness at trial.[7]  Mr. Ambrosio's further representation of Roland could influence or limit the defense's ability to call this potential witness on the defense case, or even investigate his background to make such a determination.  Mr. Ambrosio might be reluctant to treat Witness No. 1 as a

---

[6] This dilemma has no remedy.  The conflict remains even if another member of the defense trial team conducts the actual in-court examination of Witness 1.

[7] Because Witness 1's identity is being protected, the Government could offer additional information to the Court either *ex parte* or with Mr. Ambrosio present without learned counsel as to why Witness 1 may be a potential defense witness.

hostile witness (for fear of revealing attorney-client communication, jeopardizing his cooperation, or out of divided loyalties) or may fail to fully explore a defense strategy that Roland specifically requested. Such a situation would inevitably invite a later claim of ineffective assistance of counsel if Roland is convicted.[8]

The Third Circuit, relying in part on *Wheat*, has repeatedly affirmed district courts' disqualification of attorneys, even where waivers were proffered or obtained. *See, e.g., Stewart*, 185 F.3d 112 at 120 (upholding district court's disqualification of counsel despite signed waivers by the defendant and former clients, where attorney had previously represented cooperating government witnesses in related civil matter); *Voigt*, 89 F.3d at 1079 (3d Cir. 1996) (upholding district court's disqualification of counsel where counsel had represented two of defendant's co-defendants in the past, as well as a possible trial witness, where waivers were obtained from two of the three former clients).

A court's decision to disqualify an attorney is afforded deference, unless the decision was entirely "arbitrary." *Voigt*, 89 F.3d at 1074. As long as the Court makes a "reasoned determination on the basis of a fully prepared

---

[8] While not addressing an ineffective assistance claim, the Third Circuit has stated in *dicta* that an appellate challenge may be foreclosed for a defendant who has waived a conflict. *United States v. Pungitore*, 910 F.2d 1084, 1143 n. 84 (3d Cir. 1990) (suggesting that "it would be a rare case in which a defendant, after convincing the trial court not to disqualify his attorney of choice, should be able to obtain a reversal of his conviction on the basis of a conflict of interests").

record," its decision will not be deemed arbitrary.  *Id.*; *accord Stewart*, 185 F.3d at 120.  Where the decision is not arbitrary, the decision of the district court is subject to review only for abuse of discretion.  *Id.*

Moreover, the Supreme Court has held that the pretrial disqualification of defense counsel in a criminal prosecution is not immediately appealable and therefore can only be raised on appeal from a judgment of conviction and sentence.  *Flanagan v. U.S.*, 465 U.S. 259 (1984).[9]  Therefore, contrary to defense counsel's representations to the Court at the conference on December 15, 2015, no interlocutory appeal is permissible.

---

[9] Section 1291 only gives circuit courts jurisdiction over appeals from "final judgments of the district courts." 28 U.S.C. § 1291. "In a criminal case, a judgment of conviction and sentence is necessary to create a final order which is appealable under 28 U.S.C. § 1291." *United States v. Tovar-Rico*, 61 F.3d 1529, 1536 (11th Cir. 1995); *see In re Solomon*, 465 F.3d 114, 122 (3d Cir. 2006).  Accordingly, this final judgment rule "prohibits appellate review until conviction and imposition of sentence." *Flanagan v. United States*, 465 U.S. 259, 263 (1984).  The Supreme Court has identified only four categories of interlocutory orders that defendants can appeal in criminal cases. These are orders: (1) denying Speech or Debate Clause-based immunity from prosecution, *Helstoski v. Meanor*, 442 U.S. 500 (1979); (2) denying Double Jeopardy Clause-based immunity from prosecution, *Abney v. United States*, 431 U.S. 651 (1977); (3) compelling medication to restore a defendant to competency, *Sell v. United States*, 539 U.S. 166 (2003); and (4) declining to modify conditions of bail, *Stack v. Boyle*, 342 U.S. 1 (1951).

Nor is certification permissible.  The only certification process the Government is aware of is pursuant to 28 U.S.C. 1292(b), which only applies to civil actions.

13

## **CONCLUSION**

Under the Sixth Amendment, defendant Roland is entitled to conflict-free counsel.  Witness 1 is entitled to have the attorney-client privilege protected. And the United States and the Court are entitled to proceedings free from the potential reversal due to a conflict brought to light well in advance of trial. Accordingly, the Government submits that the Court should disqualify Mr. Ambrosio from continuing to represent defendant Farad Roland in this matter.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney

By:  _____
ROBERT L. FRAZER
Assistant U.S. Attorney
ROBERT J. FEITEL
Special Assistant U.S. Attorney
COURTNEY A. HOWARD
Assistant United States Attorney

Dated:  December 18, 2015
Newark, New Jersey