

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

| | |
|---|---|
| *970 Broad Street, Suite 700*<br>*Newark, New Jersey 07102* | *(973) 645-2700* |

January 5, 2016

**VIA ECF AND ELECTRONIC MAIL**
The Honorable Esther Salas
United States District Court
Martin Luther King, Jr. Federal Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    <u>United States v. Farad Roland</u>
             Crim. No. 12-298 (ES)

Dear Judge Salas:

      Please accept this letter as the Government's reply to Defendant Farad Roland's Response in Opposition, filed December 28, 2015 (Dk. No. 134) ("Defendant's Response"). The Government submits this letter brief in further support of its Motion to Disqualify Thomas Ambrosio.

      Defendant's Response relies primarily on three flawed arguments: (1) that no actual or potential conflict exists; (2) that the Defendant has a Sixth Amendment right to appointed counsel of his choice; and (3) that no relevant privileged communications occurred between Mr. Ambrosio and Witness 1. Each of these arguments must fail, as none has any basis in the law or the facts of this case.

      At the outset, the Government notes the repeated suggestion by defense counsel that the Government is "attempt[ing] to manufacture a conflict where one does not exist." (Defendant's Response at 36.) That is simply not the case. Not only are there serious potential conflicts of interest, defense counsel's own brief includes a request that creates a clear *actual* conflict of interest: counsel asked that the Court order disclosure of Witness 1's identity. (Defendant's Response at 24.) Mr. Ambrosio, as Witness 1's counsel, has an ethical duty to act in his client's best interest. It is difficult to imagine how it would be in Witness 1's best interest to have his identity disclosed, given the safety concerns associated with testifying against Roland in this trial. Therefore, Mr. Ambrosio is currently laboring under an actual conflict between the interests of Witness 1 and the interests of Roland, as expressed by counsel in Defendant's Response. *See United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988) (citations omitted) (noting that an actual conflict of interest occurs when "'the defendants' interests diverge with respect to a material factual or legal issue or to a course of action'" such that the attorney finds himself in the untenable position of serving two clients with incompatible needs). This actual conflict—which has arisen

just in the course of litigating this motion, even before we begin trial—clearly illustrates why Mr. Ambrosio's continued representation of Roland is untenable.

Relatedly, defense counsel references the disclosure of *Brady* information and claims, based on a representation by the Government that the Defendant may want to call Witness 1 at trial, that *Brady* information has been withheld. (Defendant's Response at 22-23.) This is not the case. The relevant information has been disclosed to all defense counsel. Moreover, Mr. Ambrosio is well-aware of why no disclosure violation has occurred. Nevertheless, because he is properly discharging his ethical obligations to Witness 1, a motion for *Brady* material has been submitted to the Court that is completely unfounded. Given that this conflict is complicating even the litigation of this motion, there is every reason to believe that an as yet unforeseen pitfall will arise during trial.

To be sure, all of the hazards of proceeding with Mr. Ambrosio laboring under this conflict of interest cannot be known or foreseen in advance of trial, which is precisely why the Supreme Court and the Third Circuit have recognized that a district court's decision to disqualify an attorney is afforded substantial latitude and deference—even in circumstances where only a potential for conflict is shown. *See Wheat v. United States*, 486 U.S. 153, 163 (1988) (holding that a district court "must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses"); *United States v. Voigt*, 89 F.3d 1050, 1074 (3d Cir. 1996) (finding that a court's decision to disqualify an attorney is afforded deference and reviewed only for abuse of discretion, as long as the Court makes a "reasoned determination on the basis of a fully prepared record"); *accord United States v. Stewart*, 185 F.3d 112, 120 (3d Cir. 1999); *see also United States v. Moscony*, 927 F.2d 742, 749 (3d Cir. 1991). Here, Mr. Ambrosio represents Witness 1 in connection with his cooperation with the Government, and as a part of that cooperation, Witness 1 will testify against Roland, who Mr. Ambrosio also represents. As detailed in the Government's Brief filed December 18, 2015, the law as applied to the facts and circumstances of this case establish that, at a minimum, a serious potential conflict exists. And in fact, as discussed *supra*, there is an actual, current conflict due to the duties and loyalties Mr. Ambrosio owes to Witness 1 and Roland—further evincing the necessity of disqualification, regardless of any proffered waivers.[1]

Nothing in the Defendant's Response contradicts this well-settled law that gives this Court discretion to disqualify counsel based on even a potential conflict of interest. Instead, Defendant's Response misconstrues the applicable legal standard and the facts and circumstances of this case.

---

[1] The New Jersey Rules of Professional Conduct are clear that—irrespective of whether Witness 1 is considered a former or current client of Mr. Ambrosio—waivers would be needed from *both* Witness 1 and Roland in order to even consider proceeding with Mr. Ambrosio's representation. *See* N.J. Rule Prof. Conduct 1.7(b), 1.9(a); Gov. Brief at 3-7. In addition, independent counsel would have to be appointed for both Roland and Witness 1.

**First**, Defendant's Response repeatedly, and erroneously, states that the Defendant has the right to choice of counsel and that his choice should not be interfered with when the potential conflict of interest is "highly speculative." (Defendant's Response at 2, 9, 13, 15, 17, 25, 29, 30).  This is misleading.  Mr. Ambrosio was appointed, not retained, and the Supreme Court has repeatedly stated that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006) (citing *Wheat*, 486 U.S. at 159).  *See also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) (internal citations omitted) ("Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel. The Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts. '[A] defendant may not insist on representation by an attorney he cannot afford.'")  Because Mr. Ambrosio was not retained, and in fact, has only been appointed counsel for Mr. Roland for approximately three months, any prejudice is minimal and easily outweighed by the actual and potential conflicts here.  *See, e.g., United States v. Basham*, 561 F.3d 302, 321-325 (4th Cir. 2009) (finding that the district court did not abuse discretion in disqualifying appointed attorneys for potential conflicts of interest, relying in part on the fact that attorneys were appointed, not retained, and that the replacement was not prejudicial when made well in advance of trial).

Moreover, the "highly speculative" language on which Defendant relies throughout his brief is from a Third Circuit case that precedes *Wheat*, *Moscony*, and *Voigt*, which all established that a district court has substantial latitude to refuse waivers of conflict, even where the "potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."  *Wheat*, 486 U.S. at 163. (Defendant's Response at 2, citing *United States v. Flanagan*, 679 F.2d 1072, 1076 (3d Cir. 1982)).  But even applying the erroneous standard fashioned by defense counsel, the actual and potential conflicts warrant disqualification.  In other words, the Government submits that even if Mr. Ambrosio were retained, and therefore subject to the heightened counsel of choice standard, the actual and potential conflicts stemming from his representation of a cooperating witness counsel in favor of disqualification.  And clearly, as evidenced by the actual conflict that has already arisen, the conflicts in this case are not "highly speculative."

**Second**, Defendant's Response argues that no conflict exists here in part because no confidential communications occurred.  But by Mr. Ambrosio's own affidavit, that cannot be true.  According to Mr. Ambrosio, he and Witness 1 met for approximately an hour and discussed the very cooperation agreement governing the testimony Witness 1 will give in this case.  For a conflict or potential conflict to exist, communication regarding case-specific facts is not required.  The confidential communication that Mr. Ambrosio and Witness 1 did have was about the terms of the cooperation agreement.  As the Court is aware, the jury's determination of the cooperator's credibility relies heavily upon the terms of—and the cooperator's understanding of—the cooperation agreement.  Extensive questioning, both on direct and cross-examination, is typically done regarding the benefits given to the cooperator

by the Government and the Government's obligation to recommend a lesser sentence if certain conditions are met. The danger to the integrity of the trial when Witness 1 testifies about the terms of the cooperation agreement, about which Mr. Ambrosio advised him, should be readily apparent. Instead, the Defendant's Response simply dismisses these potential trial landmines as "highly speculative and shockingly attenuated hypotheticals." (Defendant's Response at 15.) Despite this label, counsel has conceded that "CW's cross-examination will be undertaken by either Mr. Jasper or Mr. Bachrach," thus admitting that a potential conflict does exist if Mr. Ambrosio conducts the cross-examination. (Defendant's Response at 18.) Just this single limitation—that Roland cannot have his very experienced trial attorney participate in the cross-examination of a key Government cooperator—could be raised on appeal, as Roland would be left with either a less-experienced trial attorney or an attorney focused on keeping credibility with the jury for a death-penalty phase argument. Either way, the Court should not allow Mr. Roland to have anything less than an unfettered cross-examination of the cooperating witness. That is not possible as long as Mr. Ambrosio remains on the case.

**Third**, the cases cited in Defendant's Response are readily distinguishable, and regardless, the prevailing law unequivocally establishes that it is well within this Court's discretion to disqualify Mr. Ambrosio in light of the facts and circumstances here. None of the cases cited in Defendant's Response involve the current or prior representation of a cooperating witness in connection with that witness's cooperation. For instance, the Defendant relies extensively on a recent decision by a New Jersey Appeals Court. *State v. Hudson*, Dkt. No. A-2943-14T4, 2015 WL 9263744 (N.J. App. Div. Dec. 21, 2015). There, in finding no actual or potential conflict, the court relied on the following: (1) that the witness who the attorney previously represented was not important to the case and likely would not be called at trial; and (2) that defense counsel represented the witness in an administrative employment proceeding ten years earlier, which the court found was not a substantially related matter. *Id.* at *8-*9. Obviously, the facts here are not remotely similar, as it cannot be argued that Mr. Ambrosio's representation of Witness 1 in connection with the cooperation agreement governing the cooperation in this very case is not a substantially related matter. Indeed, it is the same matter. Other cases cited in Defendant's Response are equally inapposite. *See United States v. Kliti*, 156 F.3d 150, 155 (2d Cir. 1998) (finding no conflict where defense counsel stood in at a bond hearing of a co-defendant (turned cooperating witness) when (1) the witness was already represented by separate counsel prior to and following the bond hearing; and (2) defense counsel advised the witness not to provide him with any substantive information because of the possible conflict of interest); *United States v. Reeves*, 2011 WL 6028000 (D.N.J. Dec. 2, 2011) (district court did not disqualify defense counsel who had briefly represented a co-defendant because the defendants had executed a Joint Defense Agreement and therefore consented to sharing confidences and litigation strategies and there was a waiver); *United States v. Hawkins*, 2004 WL 2102017 (E.D.Pa. Aug. 26, 2004) (retained counsel not disqualified where waivers were obtained and witness was not a key trial witness); *United States v. Lebed*, 2005 WL 1971877 (E.D.Pa. Aug. 12, 2005) (retained counsel not disqualified where representation of a witness was limited to several minute conversation, which then resulted in getting witness separate counsel).

      The Government agrees with defense counsel that the facts and circumstances of this case must be considered when determining whether disqualification is appropriate.  For all the foregoing reasons, as well as those in the Government's moving brief, the facts and circumstances of this case establish actual and potential conflicts that warrant the disqualification of Mr. Ambrosio.  Accordingly, "the Court should attempt to eliminate [the conflicts] so as to preserve the integrity of the judicial process."  *United States v. Lacerda,* 929 F.Supp.2d 349, 362 (D.N.J. 2013) (Hillman, J.).  Accepting waivers of the conflict expose this case to post-conviction collateral attack and appeal, which is why the Third Circuit has noted that "district courts should be motivated to eliminate potential conflicts of interest in pursuit of their 'legitimate wish . . . [to have] their judgments remain intact on appeal.'"  *Id.* (citing *United States v. Voigt,* 89 F.3d 1050, 1078 (3d Cir. 1996)).  The Government respectfully requests that the Court do so here by disqualifying Mr. Ambrosio.[2]

                                      Respectfully Submitted,

                                      PAUL J. FISHMAN
                                      United States Attorney

By: *[signature]*
     COURTNEY A. HOWARD
     Assistant U.S. Attorney
     ROBERT L. FRAZER
     Assistant U.S. Attorney
     ROBERT J. FEITEL
     Special Assistant U.S. Attorney

cc:    Thomas Ambrosio, Esq. (by email)
       Richard Jasper, Esq. (by email)
       Michael Bachrach, Esq. (by email)

---

[2] On the issue of an interlocutory appeal, *Flanagan v. United States*, 465 U.S. 259 (1984), governs and is dispositive.  Nothing cited in Defendant's Response says otherwise, and short of the Supreme Court overruling *Flanagan*, it remains the rule.  The final judgment rule would have no validity if courts could do an end-run around 28 U.S.C. § 1291 and Supreme Court precedent by adopting civil rules allowing for certification.