Law Office of

# Michael K. Bachrach

276 Fifth Avenue, Suite 501
New York, N.Y. 10001
\-\-\-\-\-\-\-\-\-\-\-\-\-
Tel. (212) 929-0592 • Fax. (866) 328-1630

Michael K. Bachrach *  
\* admitted in N.Y., MN and D.C.

http://www.mbachlaw.com
michael@mbachlaw.com

January 8, 2016

<u>By ECF - Hard copy to follow</u>

The Honorable Esther Salas
United States District Court Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

*Re: United States v. Farad Roland, et al.,*
*12 Cr. 298 (ES) (D.NJ)*

Dear Judge Salas:

      We write to respectfully request that Your Honor accept this short surreply in further opposition to the Government's motion to disqualify Tom Ambrosio. We ask that this Court accept this surreply because the Government continues to present misleading and facially insufficient arguments that, we submit, cannot go unanswered, particularly in light of the defense obligation, under the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, to ensure a thorough and complete record for purposes of any potential appeal.

      At the outset we note that the Government appears to believe that CW has made confidential communications to Mr. Ambrosio that require protection, presumably as attorney/client privileged communications since no other privilege could apply. To agree with the Government's position, however, would be misplaced. First, Mr. Ambrosio has submitted a sworn declaration disputing the existence of any privileged communications that are relevant to the facts of this case. The Government has made no effort to dispute Mr. Ambrosio's declaration, instead claiming the conflict is borne from Mr. Ambrosio's legal explanation of the workings of Federal cooperation agreements – a generic discussion that takes place in every Federal case relying upon a cooperating witness and here did not include confidential facts.

      Even assuming *arguendo* that privileged communications occurred during Mr. Ambrosio's one-hour meeting with CW, the existence of the attorney/client privilege, without more, is not sufficient to bar him from cross-examining CW. <u>See</u> <u>United States v. Cunningham</u>, 672 F.2d 1064, 1073-74 (2d Cir. 1982); <u>United States v. Donatelli</u>, 484 F.2d 505, 506 (1st Cir. 1973). Indeed, we only offered to have Mr. Bachrach or Mr. Jasper cross-examine CW in place of Mr. Ambrosio as a compromise, not a concession. Numerous courts have permitted similar remedies so long as

measures could be taken to protect the confidentiality of privileged information. See, e.g., United States v. Basciano, Docket No. 03 Cr. 929 (NGG), 2008 WL 794945, at *6-*9 (EDNY March 24, 2008) (finding that in light of the defendant's waiver, after a Curcio hearing, no denial of right to conflict-free counsel where co-counsel crossed-examined cooperating witness whom lead counsel had advised to cooperate notwithstanding the fact that lead counsel was also a friend of the witness, had consulted at length with him about the witness's specific criminal exposure, including the impact his cooperation could have on the defendant's case); Cunningham, 672 F.2d at 1073-74 (reversing disqualification of counsel and holding that "[t]he district court may take appropriate steps, including limiting cross-examination to matters of public record, to ensure that [counsel] does not violate [the witness's] attorney-client privilege"); see also, generally, United States v. Pizzonio, 415 F.Supp.2d 168 (EDNY 2006) (Weinstein, J.) (finding multiple conflicts waivable); United States v. Perrone, Docket No. 05 Cr. 774 (RPP), 2007 WL 1575248 (SDNY May, 29, 2007) (Patterson, J.) (denying motion to disqualify conflicted defense counsel where defendant waived conflict *even though witness refused to waive*).

The Government ignores the fact that the disclosure of attorney-client communications by the client to third parties, such as to the Government during a proffer session, destroys the attorney/client privilege *in toto*. See, e.g., Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1427 (3d Cir. 1991) ("Even though DOJ apparently agreed not to disclose the information, under traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else.") (footnote and citations omitted); United States v. Rockwell Intern., 897 F.2d 1255, 1265 (3d Cir. 1990) ("The attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed…. It has been held that the disclosure of any meaningful part of a purportedly privileged communication 'waives the privilege as to the whole.' ") (citations omitted). As such, even assuming *arguendo* that: (1) privileged communications occurred; (2) those communications were material and relevant to this case; and (3) those communications could somehow advantage the defense if revealed to Mr. Roland and/or his other attorneys; if CW informed the Government about his privileged communications with Mr. Ambrosio, or if those communications were "intended to be disclosed", then those communications are no longer privileged and no interest remains that requires protection.

Turning to the Government's claim that a conflict has arisen as a result of our request that Mr. Bachrach and Mr. Jasper be provided the identity of CW, such ignores two simple truths: First, as the Government points out, "a court's decision to disqualify an attorney is afforded deference and reviewed only for abuse of discretion, as long as the Court makes a 'reasoned determination on the basis of a fully prepared record,' " Gov't Reply at 2 (emphasis added), quoting, United States v. Voight, 89 F.3d 1050, 1074 (3d Cir. 1996). How though can there be a "fully prepared record" if the defense is precluded from learning the complete basis for the purported conflict, including the identity of CW so that the unconflicted counsel can ascertain why Mr. Ambrosio is, according to the Government, "well-aware of why no [Brady] violation has occurred." Gov't Reply at 2. Second, either there is a Brady violation, or not, but it is wholly contradictory for the Government to argue in its opening brief that there is favorable information unknown to defense counsel that it is willing to share with Mr. Ambrosio, see Gov't Mot. at 11 n.7, and then argue in its reply brief that a conflict would be created to disclose such favorable information to Mr.

Bachrach and Mr. Jasper. The requirements of Brady v. Maryland, 373 U.S. 83 (1963), simply do not permit parsing "favorable information" in the manner attempted here by the Government.

The Government claims a conflict exists because we requested the identity of CW after reviewing the Government's motion, however, CW has not been singled out as the Government suggests. Our request for CW's identity was made in conjunction with demand for the identities of *all* witnesses known to the Government to possess information favorable to the defense. See Defendant's Response Brief, dated, December 28, 2015, at 24. As discussed in Defendant's response brief, without being informed of the identities of the Brady witnesses, the information disclosed in the Government's November 16, 2015, Brady-letter is insufficient and meaningless. Regardless, the Government's need to respond to a Brady demand is not a conflict, it is the fulfillment of their Constitutional responsibilities.

Furthermore, revealing CW's identity to defense counsel (as well as the identities of the other Brady witnesses referenced in the Government's November 16, 2015 Brady-letter) poses no "safety concerns" as claimed by the Government, see Gov't Reply at 1, particularly if the identity of CW is revealed to Mr. Bachrach and Mr. Jasper pursuant to the protective order suggested by the defense, see Defendant's Resp. Br. at 24 n.6. The defense, including Mr. Roland, is already aware of at least three cooperating witnesses. No harm or contact has been made to these witnesses or their family members, and the Government cannot point to one fact that would support the proposition that Mr. Roland has attempted to contact, threaten, or coerce any witness against him since being arrested in this case. Nor has the Government presented any fact to establish that Mr. Roland even has the realistic ability to direct others to carry out attacks upon those individuals cooperating against him, particularly since all of Mr. Roland's purported associates are either incarcerated, in witness protection, or dead.

The Government also spends some time arguing that "counsel of choice" case law is inapplicable here because Mr. Ambrosio is appointed, not retained. The Government's position, however, is again both inconsistent and misleading. First, the Government appears to forget that before the defense cited the "counsel of choice" case law in our response brief, the Government first relied upon and quoted it in the Government's own motion. See Gov't Mot., dated, December 12, 2015, at 10 (the Government arguing, "Accordingly, as the Third Circuit noted in Moscony, 'the presumption in favor of a defendant's counsel of choice' can be overcome, 'not only when an actual conflict is found, but when there is 'a showing of a serious potential for conflict.'"), quoting, United States v. Moscony, 927 F.2d 742, 750 (3d Cir. 1991) (in turn quoting, Wheat v. United States, 486 U.S. 153, 164 [1988]); see also Gov't Mot. at 12 n.3 (noting, "the Third Circuit has stated in *dicta* that an appellate challenge may be foreclosed for a defendant who has waived a conflict"), citing, United States v. Pungitore, 910 F.2d 1084, 1143 n.84 (3d Cir. 1990) (for the proposition that, "it would be a rare case in which a defendant, after convincing the trial court not to disqualify his attorney of choice, should be able to obtain a reversal of his conviction on the basis of a conflict of interests"). Apparently, the Government wants to have it both ways: citing to "counsel of choice" case law when it helps them and then claiming it's irrelevant when they realize that the law buries them instead.

The Government also ignores that during the status conference we specifically referred to the Sixth Amendment right to counsel of choice as a "qualified right", and then argued in our response brief that *all* of the cases relied upon by both parties recognize that a motion to disqualify counsel is *always* based upon the extent of the conflict at issue, i.e., a qualified right not an absolute one – something the Government now appears to concede.  Indeed, the fact that Mr. Ambrosio is appointed, rather than retained, is also a red herring.  Simply being appointed does not mean that the "counsel of choice" case law no longer applies; they remain amongst the factors that this Court may consider in rendering its decision (if not, then the Government would not have relied upon the "counsel of choice" discussion in its motion).  Obviously, an indigent defendant cannot force a judge to appoint a specific attorney to represent him relying solely upon this aspect of the Sixth Amendment.  However, if, as here, the attorney has *already been appointed*, and thus already developed an attorney/client relationship without prior objection from the Government, then the fact that he was not retained becomes irrelevant absent an actual conflict, which, as should be clear by now, does not exist in this case.

The Government oddly attempts to distinguish United States v. Flanagan, 679 F.2d 1072, 1976 (3d Cir. 1982), by arguing that it was decided prior to Wheat, Moscony, and Voigt, "which all established that a district court has substantial latitude to refuse waivers of conflict, even where the 'potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.' " Gov't Reply at 3, citing, Wheat, 486 U.S. at 163.  Of course, no one disputes that this Court has "latitude to refuse waivers of conflict", but such principle does not remotely contradict or undermine the additional principle that the "Defendant's choice of counsel is not to be dealt with lightly or arbitrarily.  **That choice should not be interfered with in cases where potential conflicts of interest are highly speculative**," Flanagan, 679 F.2d at 1076 (emphasis added), as is the case here, assuming a conflict of any kind exists here at all.

Similarly, the Government's attempt to factually distinguish State v. Hudson, Docket No. A-2943-14T4, 2015 WL 9263744 (NJ App. Div. Dec. 21, 2015), completely ignores that the case is not cited as an example of a 100% factually analogous situation, rather it is cited to show that the NJ Rules of Prof. Conduct are not interpreted in the absolutist manner that the Government claimed in its opening brief (and still misleadingly cling to in its reply).

Lastly, the Government's implication that Mr. Bachrach is too inexperienced and Mr. Jasper too distracted for either to conduct an effective cross-examination of CW is offensive.  See Gov't Reply at 4 (arguing that a potential conflict exists if "Roland cannot have his very experienced trial attorney participate in the cross-examination of a key Government cooperator … as Roland would be left with either a less-experienced trial attorney or an attorney focused on keeping credibility with the jury for a death-penalty phase argument.").  First, Mr. Bachrach has 15 years of criminal defense experience and is a member of the Criminal Justice Act panel for the Southern District of New York.  Second, Mr. Jasper has 30 years of criminal defense experience, is also a member of the Criminal Justice Act panel for the Southern District of New York, as well as the learned counsel panels for both the Southern and Eastern Districts of New York.  To argue that either is too inexperienced or too distracted to conduct cross-examination of a cooperating witness further evinces the weak foundation of the Government's motion.  Such argument also evinces a complete misunderstanding of how capital trials are defended, since the Government

The Honorable Esther Salas
January 8, 2016
Page 5 of 5

appears ignorant of the widely understood belief that a capital trial is only effectively defended when all theories of defense are integrated (i.e., trial and penalty phase theories must work together hand-in-hand, not as separate theories where the second could be undermined by the first).

Additionally, the Government appears bothered by the implication that they are attempting to manufacture a disqualifiable conflict where none exists. We assure this Court and the Government that no party is more concerned with this implication than the defense. How else though to interpret what has occurred?

It would have been perfectly appropriate if the Government had alerted this Court and the defense that Mr. Ambrosio previously represented a cooperating witness and then asked for a hearing to determine whether there was an actual or potential conflict that warranted Mr. Ambrosio's disqualification. Such would have been a perfectly reasonable request that would have been completely unobjectionable and met with no resistance. <u>But that is not what has occurred here.</u> The Government did not ask for a conflict hearing, they asked for Mr. Ambrosio to withdraw, and they did so in a secretive manner without simultaneously alerting Mr. Bachrach and Mr. Jasper. When Mr. Ambrosio took the position that he saw no reason to withdraw, the Government again failed to request a conflict hearing, nor the appointment of independent conflict-counsel to evaluate the situation and advise Mr. Roland and CW accordingly. Instead, the Government moved to disqualify Mr. Armbrosio, claiming an actual, unwaivable conflict, which required his immediate and automatic disqualification, even though the Government's motion lacked any support other than speculation. Worse still, when Mr. Ambrosio submitted a sworn statement to rebut the Government's allegations, the Government used Mr. Ambrosio's responsive declaration (and our <u>Brady</u> demand) as a basis for disqualification. All this after the Government represented to this Court that Mr. Ambrosio passed a conflict check. And, as avoided in the Government's briefs, AUSA Frazer (the lead prosecutor in this case) was one of the prosecutors involved in obtaining CW's cooperation in the first place.

Accordingly, for all of the reasons discussed above and as well as in Defendant's Response Brief, dated, December 28, 2015, we respectfully submit that the Government's motion should be denied on its face, or denied after a conflict hearing. Should such a hearing be conducted then we submit that separate and independent counsel should be appointed for both Mr. Roland and CW to evaluate the purported conflict and provide unbiased advice to Mr. Roland and CW on how each should proceed. We also stand by our previous arguments that an interlocutory appeal is appropriate in this authorized death penalty case in the event that the Government's motion is granted.

        Respectfully submitted,

        /S/ Michael K. Bachrach
        /S/ Richard Jasper
        /S/ Thomas Ambrosio
        *Attorneys for Defendant Farad Roland*