LAW OFFICE OF
# MICHAEL K. BACHRACH
276 FIFTH AVENUE, SUITE 501
NEW YORK, N.Y. 10001
---------------
TEL. (212) 929-0592 • FAX. (866) 328-1630

MICHAEL K. BACHRACH *                                                          http://www.mbachlaw.com
\* admitted in N.Y., MN and D.C.                                           michael@mbachlaw.com

January 21, 2016

<u>By ECF - Hard copy to follow</u>

The Honorable Esther Salas
United States District Court Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

                                        ***Re: United States v. Farad Roland, et al.,***
                                        ***12 Cr. 298 (ES) (D.NJ)***

Dear Judge Salas:

       We submit this supplemental reply-letter-brief in further opposition to the Government's motion to disqualify Tom Ambrosio. For the reasons that follow, we once again submit that the Government's motion should be denied.[1]

       The Government begins its most recent brief arguing that disqualification is required because "Mr. Ambrosio's representation of CW is current". <u>See</u> Gov't letter-brief, dated, January 20, 2016, at 1 (discussing New Jersey Rule of Professional Conduct ["RPC"] 1.7). Such argument intentionally ignores that this Court has already ruled that Mr. Ambrosio may not continue to represent CW *under any circumstance*. <u>See</u> 1/14/16 Transcript at 43-44 (this Court: "Mr. Ambrosio can never represent CW ever…. [CW] can never have [Mr. Ambrosio]."). The Government's continued reliance on RPC 1.7 is troubling. AUSA Frazer insisted that Mr. Ambrosio should not be relieved until "after independent counsel is appointed, and the [conflict] colloquy is done *because, Judge, it will make the colloquy and questions for CW complicated if you take that action prior to independent counsel*" (1/14/16 Transcript at 94) (emphasis added). The real reason for AUSA Frazer's insistence is now clear – it was to provide a basis for the Government's continued, disingenuous, reliance on RPC 1.7.

       The Government then turns, as it should have in the first place, to RPC 1.9, which relates to prior representation. However, even with respect to RPC 1.9, the Government relies upon the same flaw that has undermined its arguments from the start: RPC 1.9 is considerably more nuanced than the Government pretends. Stated another way, it is not the rule itself that governs, but rather the rule *as interpreted by* the courts. <u>See</u> <u>Wyeth v. Abbott Labs.</u>, 692 F.Supp.2d 454, 455-56 (D.NJ 2010) (Pisano, J.) (attorney ethics governed by RPC "as modified by the New Jersey Supreme Court") (citations omitted); <u>FMC Corp. v. Guthery</u>, Civil Action No. 07-5409 (JAP), 2009 WL

---

[1]     We note that the instant letter-brief is approximately five and a half pages long. This is as short as we believe we can to fashion this reply without sacrificing effective representation. As such, we respectfully request that this Court accept the instant letter-brief in its present oversized form.

485280, at *3 (D.NJ Feb. 24, 2009) (Bongiovanni, M.J.) (courts "look[] to New Jersey's state courts' interpretations of [the RPC] as primary authority and modifies that interpretation when required or permitted by federal law").

In applying the RPC, the Government's motion "must be carefully scrutinized because 'motions to disqualify are viewed with 'disfavor' and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary.' " Carlyle Towers Condo. Ass'n v. Crossland Sav., 944 F.Supp. 341, 345 (D.NJ 1996) (Chesler, J.) (internal citations omitted). A high hurdle is applied because "disqualification of counsel is a harsh discretionary remedy which must be used sparingly." Southward v. Elizabeth Board of Education, Civil Action No. 15-3699 (ES) (JAD), 2015 WL 8780536, *2 (D.NJ Dec. 14, 2015) (Dickson, M.J.), quoting, Cavallaro v. Jamco Property Management, 760 A.2d 353, 361 (NJ App. Div. 2000).

The moving party, here the Government, bears the burden of proving that disqualification is warranted. See City of Atl. City v. Trupos, 201 N.J. 447, 463 (NJ 2010). Disqualification motions are fact sensitive, requiring a careful scrutiny of the facts because **"surmise alone cannot support an order of disqualification."** Trupos, 201 N.J. at 464, 469 (emphasis added); see also Carreno v. City of Newark, 834 F.Supp.2d 217, 224 (D.NJ 2011) (Falk, M.J.) (same).

As discussed during oral argument on January 14, 2016, RPC 1.9 has three hurdles that must be overcome before an attorney is required to be disqualified: "(1) the existence of a past attorney client relationship; (2) that the current representation involves the same or a matter substantially related to the previous representation; and (3) that the interests of the attorney's current client are materially adverse to the interests of the former client." Izzo v. Twp. of Raritan, No. CV 15-1262(MAS) (TJB), 2015 WL 6524343, at *3 (D.N.J. Oct. 28, 2015) (Shipp, J.) (internal citations omitted and emphasis added).

Here, as in most cases, the Government's motion to disqualify turns on the second prong of Rule 1.9, i.e., whether Mr. Ambrosio's representation of Mr. Roland involves a matter that is the same or "substantially related" to his prior representation of CW. Matters are "substantially related" if either "(1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation." Trupos, 201 N.J. at 451-52, 467.

Whether current representation is the same or substantially the same as the prior representation requires "a fact sensitive analysis to ensure that the congruity of facts, and not merely similar legal theories, govern whether" disqualification in required. Trupos, 201 N.J. at 467. Accordingly, the Government bears the burden "of proving that, in fact, the current and former representations are 'substantially related,' " id., which occurs "where the issues between the former and present suits are practically the same or where there is a patently clear relationship between them," id. at 466, quoting, Home Care Industries v. Murray, 154 F.Supp.2d 861, 866 (D.NJ 2001) (Wigenton, J.).

"However, the mere fact that the *subject matter* is the same is not enough to deem a case 'substantially related.' " Chi Ming Yau v. He Cheng Rest. Corp., No. Civ. 12-6754 (MCA) (LDW)

(JAD), 2015 WL 3540596, at *7 (D.N.J. June 2, 2015) (Dickson, M.J.) (emphasis added), citing, Trupos, supra.² Although there is a presumption that confidential information was shared, there is no proscription against using such information, even to the disadvantage of the former client, so long as "the information becomes generally known," Herbert v. Haytaian, 678 A.2d 1183, 1188-89 (NJ App. Div. 1996) (citations omitted), *which will be the case here* no later than when CW's Brady, Giglio, and Jenks Act material are disclosed to the defense.

Furthermore, disqualification requires more than mere surmise or speculation that counsel is in possession of information which could be used against a former client. See Trupos, 201 N.J. at 469 (motion to disqualify denied where the moving party could "point to no confidential communications it shared with the law firm that could … or might be used against" it in the subsequent litigation); Chi Ming Yau, 2015 WL 3540596, at *7 (motion to disqualify denied where the moving party failed "to inform the Court of exactly what information was exchanged" in the prior representation, and could not "identify *any* confidential information imparted to or used by" counsel) (emphasis in original); see also United States v. Flanagan, 679 F.2d 1072, 1976 (3d Cir. 1982) ("choice [of counsel] should not be interfered with in cases where potential conflicts of interest are highly speculative"). The test is whether the lawyer "received confidential information" in the prior litigation "that can be used" against the client in the present case, Carreno, 834 F.Supp.2d at 277, citing, Trupos, 201 N.J. at 467; here, that simply did not occur. See Ambrosio Declaration at ¶¶ 8-14, 17, 22-24, 26.

Importantly, as courts in this District have repeatedly recognized, "Disqualification motions require careful scrutiny of the underlying facts and a 'sense of practicality' to avoid unjust results." Carreno, 834 F.Supp.2d at 224 (emphasis added), citing, Martin v. AtlantiCare, Civil No. 10–6793 (JHR) (JS), 2011 WL 5080255, at *2 (D.N.J. Oct. 25, 2011) (Schneider, M.J.) ("Since disqualification issues are intensely fact-specific, it is essential to approach such issues with a sense of practicality as well as a precise understanding of the underlying facts."), citing, Murphy v. Simmons, Civ. No. 06–1535 (WHW), 2008 WL 65174, at *5 (D.NJ Jan.3, 2008) (Walls, J.); Montgomery Acad. v. Kohn, 50 F.Supp.2d 344, 349 (D.NJ 1999) (Chesler, J.) (same).

Applying these principles to the present case it cannot be said that Mr. Ambrosio's present representation of Mr. Roland is "substantially related" to his prior representation of CW.  Mr. Ambrosio did not "receive[] confidential information from [CW] that can be used against [CW] in the subsequent representation" of Mr. Roland. Trupos, 201 N.J. at 451-52, 467. Moreover, "facts relevant to the prior representation" of CW are neither "relevant" nor "material" to Mr. Roland's defense. Id.; see also United States v. Basciano, Docket No. 03 Cr. 929 (NGG), 2008 WL 794945, at *8 (EDNY March 24, 2008) ("[T]he source of the advice to cooperate has little relevance to the motivations that might call a cooperating witness's credibility into question. The significant

---

² The nature and extent of the prior representation always play a role in the court's fact-specific analysis. See United States v. Voigt, 89 F.3d 1050, 1077 (3d Cir. 1996); Wheat v. United States, 486 U.S. 153, 164 (1988); see, generally, Southward v. Elizabeth Board of Ed., supra, 2015 WL 8780536 (D.NJ Dec. 14, 2015); United States v. Morrell-Corrada, 343 F.Supp.2d 80 (D.P.R. 2004); see also United States v. Kliti, 156 F.3d 150, 155 (2d Cir. 1998) (defense counsel's temporary representation of potential witness at a bond hearing did not create a conflict that required disqualification); Salam v. A.L. Lockhard, 874 F.2d 525, 528 (8th Cir. 1989) (representation merely at bond hearing not sufficient to raise conflict); Mannhalt v. Reed, 847 F.2d 576, 580 (9th Cir. 1988) (finding no Sixth Amendment violation arising from defense counsel's prior representation of witness during a lineup and arraignment).

information for a jury is that a cooperating witness has committed crimes for which he hopes to receive a lesser sentence by virtue of cooperating."). Moreover, as is often key, timing and context are particularly important in this instance.

Mr. Roland was originally indicted on May 4, 2012, and his most recent Superseding Indictment was filed on June 5, 2013. However, Mr. Ambrosio was not appointed to represent CW until nearly a year later, on March 25, 2014. Prior to Mr. Ambrosio's first and only meeting with CW, AUSA Frazer and Mr. Ambrosio spoke by telephone about Mr. Ambrosio's appointment (1/14/2016 Transcript at 5-7). AUSA Frazer explained that CW required an attorney with Federal experience "to explain to CW how federal cooperation works, to review CW's federal cooperation agreement with him and to advise CW regarding potential impact … federal cooperation could have on CW's state sentence" (1/14/2016 Transcript at 5-6). During that telephone conversation AUSA Frazer "informed Mr. Ambrosio that CW's cooperation concerned a gang case" (1/14/2016 Transcript at 6). Mr. Ambrosio's only meeting with CW occurred on March 26, 2014. On or about April 1, 2014, CW testified before the Grand Jury in a separate and unrelated case. See Gov't Mot., dated, December 18, 2015, at 2 & 2 n.5. Mr. Ambrosio filed his FINAL Criminal Justice Act voucher related to his representation of CW on or about April 22, 2014. And Mr. Ambrosio was not appointed to represented Mr. Roland until over sixteen months later on September 2, 2015. Prior to September 2015, Mr. Ambrosio had never heard of Mr. Roland or the South Side Cartel. See Ambrosio Declaration at ¶ 38. The Government concedes that there is nothing in its investigation to suggest that Mr. Ambrosio had heard of Mr. Roland or the South Side Carter earlier (1/14/2016 Transcript at 16). **These facts are not in dispute.** See 1/14/2016 Transcript at 3-17.

We respectfully submit these undisputed facts lead to only one reasonable conclusion: CW never provided Mr. Ambrosio with any confidential information that *is material and relevant to Mr. Roland's defense*. Such conclusion is particularly reasonable when one considers that CW's Grand Jury testimony related to an entirely separate and unrelated matter, and Mr. Ambrosio's brief representation of CW occurred *nearly a year after* the issuance of Mr. Roland's most recent Superseding Indictment and *over sixteen before* Mr. Ambrosio had ever even heard Mr. Roland's name. In light of the timing of these events, absent more than mere surmise or speculation we respectfully submit that it would be unreasonable to conclude (or even presume) that CW made any statements to Mr. Ambrosio that are material and relevant to Mr. Roland's case.

The Government takes the position that conversations related to CW's cooperation agreement are sufficient to create a duty of loyalty that requires Mr. Ambrosio's disqualification. We disagree. First, the nature of the prior representation always figures into the court's analysis. See discussion at 3, n.2, supra. Second, even presuming that confidential information was provided, the attorney/client privilege was likely waived during one or more of CW's proffer sessions with the Government. See Defendant's Surreply, dated, January 8, 2016, at 2, discussing, Westinghouse Elec. Corp. v. Republic of Philippines, 951 F.2d 1414, 1427 (3d Cir. 1991); United States v. Rockwell Intern., 897 F.2d 1255, 1265 (3d Cir. 1990); see also Trupos, 201 N.J. at 469 ("because the 'appearance of impropriety' standard no longer has any vibrancy when gauging the propriety of attorney conduct, surmise alone cannot support an order of disqualification."); Yau v. He Cheng Restaurant Corp., Civil No. 12-6754 (MCA), 2015 WL 3540596, at *7 (D.NJ June 2,

2015) (Dickson, M.J.) ("The fact that Plaintiff cannot identify any confidential information imparted to or used by Xue confirms Xue's denial of having received any such information.").

Even assuming *arguendo* that confidential communications were had, that the privilege over them had not been waived, and that no duty of Government disclosure existed under Brady, Giglio, or the Jenks Act, "careful scrutiny of the underlying facts and a 'sense of practicality' to avoid unjust results," Carreno, 834 F.Supp.2d at 224, in this case disfavors the "harsh discretionary remedy" of disqualification that "must be used sparingly," Southward, 2015 WL 8780536, *2, and indeed not used "except when absolutely necessary," Carlyle, 944 F.Supp. at 345.

Here, Mr. Ambrosio's communications with CW were limited to a one-hour conversation that took place nearly two years ago. The conversations were limited to an explanation of CW's Federal cooperation agreement, which was to provide sentencing mitigation in relation to CW's unrelated State case. CW thereafter testified before the Grand Jury in an entirely separate and unrelated prosecution having nothing to do with Mr. Roland or the South Side Cartel, and indeed Mr. Ambrosio had never even heard of Mr. Roland or the South Side Cartel until he was approached to be appointed in this case. Juxtapose those uncontested facts with the strong bond that Mr. Ambrosio has developed with Mr. Roland and the entire defense team over the now **nearly-five-months** since his appointment in this case, and we respectfully submit that disqualification is certainly not "absolutely necessary" here.

Furthermore, assuming that Mr. Roland waives any potential conflict, as we expect him to do at the Rule 44(c) hearing, disqualification is particularly unnecessary in light of our offer to have Mr. Jasper or Mr. Bachrach cross-examine CW rather than Mr. Ambrosio; this is true irrespective of whether CW also waives the potential conflict. See Southward v. Elizabeth Board of Ed., supra, 2015 WL 8780536, at *3 (D.NJ Dec. 14, 2015) (denying motion to disqualify even though prior client "expressly stated that she refuses to waive"); United States v. Perrone, Docket No. 05 Cr. 774 (RPP), 2007 WL 1575248 (SDNY May, 29, 2007) (Patterson, J.) (denying motion to disqualify conflicted defense counsel where defendant waived conflict *even though witness refused to waive*); Basciano, 2008 WL 794945, at *6-*9 (finding no conflict where co-counsel crossed-examined cooperating witness whom lead counsel had advised to cooperate *even though the witness refused to waive the potential conflict*).[3]

Finally, we cannot over-state the similarities between United States v. Morrell-Corrada, supra, 343 F.Supp.2d 80 (D.P.R. 2004), and the case at bar. In Morrell-Corrada the Government moved to disqualify defense counsel alleging a conflict of interest between defense counsel and a former client who testified before the Grand Jury. Id. at 82. There, as here, the Government waited "almost three months" before bringing the potential conflict to the attention of the court. Id. at 92. The defense opposed arguing that no information regarding the defendant was learned during the

---

[3] The Government's suggestion during oral argument that additional remedial measures would be required, such as limiting Mr. Ambrosio's ability to sum up on CW's testimony, is without support. We are aware of no case – and the Government cites to none – that requires such over-reaching remedial measures. See, generally, Basciano, supra, 2008 WL 794945; Perrone, supra, 2007 WL 1575248; see also United States v. Cunningham, 672 F.2d 1064, 1073-74 (2d Cir. 1982) (reversing disqualification of counsel and holding that "[t]he district court may take appropriate steps, including limiting cross-examination *to matters of public record*, to ensure that [counsel] does not violate [the witness's] attorney-client privilege") (emphasis added).

The Honorable Esther Salas
January 21, 2016 – Page 6 of 6

prior representation of the witness, that the witness waived the attorney/client privilege as a result of his communications with the Government, and that the Government was attempting to manufacture a conflict where no disqualifiable conflict existed.  Id. at 83.  In a detailed and thorough opinion, the court agreed with the defense on all fours, and denied the Government's motion in its entirety.  Id. at 84-92.

Although Morrell-Corrada did not take place within the Third Circuit, the court's analysis was entirely dependent upon Rule 1.9 of the Model Rules of Professional Conduct, which is identical to NJ RPC 1.9.  As such, if Your Honor has not yet had the opportunity to review Morrell-Corrada we respectfully submit that this Court should – we know of no case that is more closely parallel to the instant disqualification motion.

Accordingly, for all of the reasons expressed herein, as well as during oral argument and in the defense counsels' prior written submissions, we respectfully submit that the Government's motion to disqualify Thomas Ambrosio should be denied.

                                                          Respectfully submitted,

                                                          /S/ Michael K. Bachrach
                                                          /S/ Richard Jasper
                                                          /S/ Thomas Ambrosio
                                                          *Attorneys for Defendant Farad Roland*

cc:     All counsel of record (by ECF)