UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA          :

                                                     :          Hon. Esther Salas
v.                                                        Crim. No. 12-298 (ES)

                                                     :

FARAD ROLAND

                                                     :


## GOVERNMENT'S MOTION FOR AN
## ANONYMOUS JURY PANEL AND HEIGHTENED JURY SECURITY

The United States of America, by and through its undersigned attorneys,

respectfully moves this Court to empanel an anonymous jury and provide for

heightened jury security (also referred to as "limited" or "partial" jury

sequestration) at the trial of this case, which is presently scheduled for

December 5, 2016.   Specifically, the Government requests that the names,

addresses, and places of employment of the prospective jurors not be revealed

to the parties, the attorneys, or the public.   To further protect juror anonymity,

the Government also requests the sequestration of the jurors during lunch and

recesses under the protection of the United States Marshal's Service.

Specifically, the Government requests that the jurors be transported each trial

day to and from an undisclosed central location, from which the jurors may

commute to and from their respective communities, and that no unauthorized

person shall be permitted to follow any such vehicle or juror to or from the

designated locations.

For the reasons addressed herein, an anonymous jury is essential in this

case.  With adequate *voir dire*, a comprehensive juror questionnaire, and appropriate instructions, use of an anonymous jury will not unfairly prejudice the defendant.

## I.  **INTRODUCTION**

The Government requests that the names, addresses, and places of employment of the prospective jurors not be revealed to the parties, the attorneys, or the public.[1]  To further protect juror anonymity, the Government also requests that the jurors be sequestered during lunch and recesses under the protection of the United States Marshal's Service, and that they be transported each trial day to and from an undisclosed central location, from which the jurors may return to their respective communities.[2]

---

[1] Anonymous juries have been consistently utilized in cases in this District involving organized crime and street gangs, including *United States v. Bailey et. al.*, Crim. No. 14-050 (Judge Irenas, violent drug gang); *United States v. Derry*, Crim. No. 14-050 (Judge Hillman adopting as law of the case Judge Irenas' decision in *Bailey*); *United States v. Bergrin I*, Crim. No. 09-369 (Judge Martini, murder of witness); *United States v. Bergrin II*, Crim. No. 09-369 (Judge Cavanaugh, RICO case involving murder); *United States v. Scarfo*, Crim. No. 11-740 (Judge Kugler, organized crime); United States v. *Shnewer*, Crim. No. 07-459 (Judge Kugler, Ft. Dix terrorism case); *United States v. Baskerville*, Crim. No. 03-836 (Judge Pisano, death penalty case involving a violent drug gang and murder of a witness); *United States v. Curry*, Crim. No. 04-280 (Judge Hochberg, violent drug gang). The Government is currently unaware of any court in this District that has denied such a motion. The Government is also not aware of any Third Circuit decision that has overturned a district court's decision to grant an anonymous jury.

[2] The Government has consulted with the United States Marshal's Service, which has advised that the Marshal's Service is fully equipped to, and has established procedures for, accommodating and handling the partial sequestration of jurors under the circumstances described here.

The serious nature of the crimes charged, including multiple murders and other acts of violence by a street gang based in Newark, combined with the public and media attention expected during the trial, could impair the jurors' ability to judge the case fairly and impartially, absent some procedures protecting their identities.   More importantly, however, are the security considerations, discussed below, that threaten the very foundation of a fair trial and an orderly judicial process.   Specifically, evidence linking the charged racketeering enterprise to several murders, attempted murders and assaults, compel the conclusion that an anonymous jury is essential to maintain the integrity of the trial and to assure the safety and security of the jurors.

Courts have ordered anonymous juries in other cases on far less compelling facts than those presented here.   In all such cases, the rights of the parties to an informed selection process and impartial jury can be satisfied by a thorough *voir dire* (including use of a juror questionnaire) and jury instructions that explain the procedures in a neutral manner designed to avoid unfair prejudice to either side.   Given that this is a capital case, which has already received and will likely receive substantial media attention, a thorough *voir dire* process is anticipated.   There is ample precedent for these procedures, as the only other capital case tried in this District, as well as the previous four death penalty cases tried in the Eastern District of Pennsylvania, all employed the same procedures that the Government is requesting here.   *See United States v. Baskerville*, Crim. No. 03-836 (D.N.J.) (Judge Joel A. Pisano); *United States v.*

*Savage, et. al.*, Crim. No. 07-550 (E.D. Pa.) (Judge R. Barclay Surrick); *United States v. Phillips*, Crim. No. 07-549 (E.D. Pa.) (Judge J. Curtis Joyner); *United States v. Williams, et al.*, Crim. No. 06-3693 (E.D. Pa.) (Judge J. Curtis Joyner); *United States v. Llera-Plaza, et al.*, Crim. No. 98-362 (E.D. Pa.) (Judge Louis H. Pollak).

## II.   <u>FACTUAL AND PROCEDURAL HISTORY</u>

Defendants Farad Roland, a/k/a "B.U.," a/k/a "Uzi" ("Roland"), Mark Williams, a/k/a "B.G." ("Williams"), and Malik Lowery, a/k/a "Leek" ("Lowery") are three of the surviving members of the South Side Cartel ("South Side" or "SSC"), a subset of the 793 Bloods criminal street gang that had more than 15 members and for years was considered one of the most violent gangs in Newark, New Jersey.   Although the South Side Cartel controlled drug distribution along the Hawthorne Avenue corridor in Newark's South Ward, the gang's most violent activity arose from interpersonal disputes, sometimes between members of South Side and rival gangs, and sometimes within South Side itself.

The defendants are charged in a 27-count Second Superseding Indictment with, among other charges, Racketeering (Count One) and Racketeering Conspiracy (Count Two).   The pattern of racketeering charged in Count One against all defendants includes fourteen racketeering acts involving murder, robbery, kidnapping, drug distribution and conspiracy to commit drug distribution.   The RICO conspiracy count charges the

defendants with 67 overt acts committed as part of the enterprise and in furtherance of the conspiracy.   The RICO conspiracy requires the Government to prove, among other elements, that "it was part of the conspiracy that defendants agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the South Side Cartel."   Second Superseding Indictment, Count Two, paragraph 3.

Additionally, the defendants are charged with certain substantive counts alleging acts of murder, carjacking, drug distribution and drug conspiracy, as well as possession of firearms in furtherance of some of these acts.

On June 5, 2013, the Grand Jury returned the Second Superseding Indictment.   On January 12, 2015, the Attorney General of the United States directed and authorized the United States Attorney to seek the death penalty for the capital crimes charged against defendant Roland.   Formal notice was given to Roland on February 9, 2015.   The Attorney General also directed and authorized the United States Attorney not to seek the death penalty for the lone capital crime charged in the Second Superseding Indictment against defendants Williams and Lowery.

On February 27, 2015, the defendants filed motions requesting severance pursuant to Fed. R. Cr. P. 14(a).   That motion was granted insofar as defendant Roland's trial was severed from that of his co-defendants.   This motion concerns only defendant Roland.

5

## III.   **LEGAL STANDARDS**

Many federal courts, including the United States Court of Appeals for the Third Circuit, have long recognized a district court's duty to take whatever steps necessary to protect juries from interference and ensure an impartial verdict.   The Third Circuit has consistently held that the decision to empanel an anonymous jury is the within the sound discretion of the district court, but that discretion must be grounded in "legitimate concerns for juror safety, courtroom security and protection of court proceedings from outside influences." *United States v. Stewart*, 325 F. Supp. 2d 474, 498 (D. Del. 2004) *aff'd*, 179 F. App'x 814 (3d Cir. 2006) (citing *United States v. Scarfo*, 850 F.2d 1015, 1021, 1023 (3d Cir. 1988); *United States v. Thornton*, 1 F.3d 149, 154 (3d Cir. 1993); *United States v. Eufrasio*, 935 F.2d 553, 574 (3d Cir. 1991)).[3]

Further, "the district court's decision to empanel an anonymous jury is entitled to particular deference, because the district court is especially familiar with the 'local ambience' surrounding a criminal trial." *Eufrasio*, 935 F.2d at 574.   An appellate court will review the district court's anonymous jury ruling

---

[3] In *Scarfo*, the court noted that, at that time, Title 18 U.S.C. § 3432 required the disclosure of the names and addresses of both witnesses and prospective jurors in a capital case three days before trial.   The *Scarfo* Court specifically stated that it was not addressing that situation in its opinion, as *Scarfo* was not a capital case.   Subsequently, recognizing the need to protect both jurors and witnesses in capital cases, Congress amended Section 3432 to permit the empanelment of an anonymous jury.   Effective September 13, 1994, Section 3432 was amended to read that "such list of the veniremen and witnesses need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life and safety of any person." *See* 18 U.S.C. § 3432.

under an "abuse of discretion" standard. *Thorton*, 1 F.3d at 154 (stating that, on appeal, a reviewing court "must be 'particularly deferential' to the district court's 'substantial discretion' to empanel an anonymous jury") (citing *Scarfo*, 850 F.2d at 1023).

In determining whether an anonymous jury should be ordered, the district court must consider "such factors as (1) pretrial publicity from prior related cases that may contribute to juror apprehension; (2) any history of violence by the defendant; (3) the severity of the charges facing the defendant; and (4) any claims that the defendant previously intimidated witnesses." *Thornton*, 1 F.3d at 154; *Scarfo*, 850 F.2d at 1023-24.

The district court is not required to conduct an evidentiary hearing on a motion to empanel an anonymous jury. *Eufrasio*, 935 F.2d at 574. However, in *Eufrasio*, the Third Circuit recommended that district courts place their findings and reasoning on the record to "facilitate intelligent appellate review." *Id.*[4]

The Second Circuit, too, has frequently approved the use of anonymous

---

[4] In *United States v. Wecht*, 537 F.3d 222 (3d. Cir. 2008), the Court found procedural error in the decision to empanel an anonymous jury. *Wecht* was not an appeal from a conviction, but an interlocutory appeal by intervening media entities seeking disclosure of the names and addresses of jurors in a highly publicized case involving fraud charges against a county coroner in Pennsylvania. Following *Wecht*, the district court should make a record of its findings as to the necessity of empaneling an anonymous jury and its considerations in safeguarding the defendant's rights to intelligently exercise his peremptory challenges. *See United States v. Morales*, 655 F.3d 608, 621 (7th Cir. 2011) (holding that failure to articulate such reasons amounted to

juries to safeguard the integrity of the judicial process and to provide safety for the jurors.   *See United States v. Prado*, No. 13-2894-CR, 2016 WL 726897, at *2 (2d Cir. Feb. 24, 2016) ("A district court may order the empaneling of an anonymous jury 'upon (a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected.'") (quoting *United States v. Kadir*, 718 F.3d 115, 120 (2d Cir. 2013)).

In determining whether there is "strong reason to believe the jury needs protection" courts have considered various factors, "including whether (1) the charges against the defendants are serious, (2) there is substantial potential threat of corruption of the judicial process, and (3) considerable media coverage of the trial is anticipated." *United States v. Pugh*, No. 15-CR-116 (NGG), 2015 WL 8481877, at *2 (E.D.N.Y. Dec. 9, 2015) (quoting *United States v. Al Fawwaz*, 57 F.Supp.3d 307, 309 (S.D.N.Y. 2014).

Although neither rejected nor adopted by the Third Circuit, the court in *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994), *cert. denied*, 515 U.S. 1132 (1995) used a five prong test—the so-called "*Ross* factors"—to determine whether the use of an anonymous jury was appropriate.   Specifically, anonymity is recommended where evidence exits of: "(1) the defendant's involvement in organized crime, (2) the defendant's participation in a group

error).

with the capacity to harm jurors, (3) the defendant's past attempts to interfere with the judicial process, (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties, and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment." *United States v. Moore*, 651 F.3d 30, 48 (D.C. Cir. 2011); *see also United States v. Ross,* 33 F.3d 1507, 1519 (11th Cir. 1994).   These factors are non-exhaustive, and are subject to the trial court's context-specific analysis.   *See United States v. Dinkins*, 691 F.3d 358, 373 (4th Cir. 2012).

## IV.   STRONG REASONS EXIST TO BELIEVE THE JURY NEEDS PROTECTION

### A.   Seriousness of The Charges

The indictment charges, and the evidence will show, that the defendant was a leader of a criminal enterprise that established and maintained its power through murder and other acts of violence.   Courts evaluate defendant's dangerousness by considering the seriousness of the charged crimes.   *United States v. Rivera*, 2015 WL 630242, Crim. No. 13-149 (E.D.N.Y. Feb. 13, 2015); *see also United States v. Barnes,* 604 F.2d 121, 130 (2d Cir. 1979) (affirming use of anonymous jury where lead defendant was charged with operating a "continuing criminal enterprise," numerous defendants were charged with conspiring to distribute narcotics, and one defendant was charged with carrying a firearm during the commission of a federal felony).   Courts have considered participation in, and especially

leadership of, a criminal enterprise to be indicative of a defendant's dangerousness.    *See, e.g., United States v. Khan*, 591 F.Supp.2d 166, 170–71 (E.D.N.Y. 2008) (reasoning that "leadership of a criminal organization indicates a Defendant's propensity for violence"); *United States v. Gotti*, 459 F.3d 296, 346 (2d Cir. 2006) (observing that defendants were charged with both membership in and leadership of an organized crime family, and that defendants had been detained pending trial due to their "dangerousness"); *United States v. Wilson*, 493 F.Supp.2d 397, 399–401 (E.D.N.Y. 2006) (observing that defendant was charged with murdering two police officers and was a member of a violent gang).    In numerous cases, courts have found that a defendant's membership in a criminal organization demonstrates an ongoing ability to interfere with the judicial process.    *See United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994) (defendants were accused of being members of a gang with "at least 100 members, many of whom were not in custody"); *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985) ("defendants were alleged to be part of a group that possessed the means to harm jurors"); *United States v. Prado*, Crim. No. 10–74 (JFB), 2011 WL 3472509, at *8 (E.D.N.Y. Aug. 5, 2011) (defendants were members of "large-scale criminal enterprise with a history of violence"); *United States v. Wilson*, 493 F.Supp.2d 397, 399–400 (E.D.N.Y.2006) (defendant was member of "violent organization that engages in acts of robbery, murder and narcotics trafficking").

The defendant in this case faces the most severe penalty under the law if convicted of the capital crimes of which he stands charged.   The defendant has already demonstrated a willingness and an ability to use murder, shootings, and threats of violence to advance his goals.   Where the sanctions faced in the instant case are so severe, there certainly is genuine concern that further harm might come to those involved in deciding the outcome of this case.

Therefore, the dangerousness factor weighs in favor of an anonymous jury.

### B. Prior Interference With The Judicial Process

Where defendants have previously attempted to interfere with the judicial process, courts have found that there is a "strong reason" to believe the jury needs protection. *United States v. Rivera,* 2015 WL 630242, Crim. No. 13-149 (E.D.N.Y. Feb. 13, 2015) at *4.   At least one of the capital murders charged herein was motivated by defendant's fear that a co-member of the gang, Fuquan Billings, would become an informant for the Government, thus exposing Roland to murder charges for his role in the felony-murder of victim Jamar Stewart as charged in Racketeering Acts Two and Three of Count One and in Counts Four and Five.   The evidence will show that Roland killed Billings by shooting him in the back of the head inside a vehicle.   The same day of the murder, Newark police had issued a warrant for Billings' arrest for the murder of Jamar Stewart.   With this knowledge, the evidence will show,

Roland believed that Billings, 19 years old at the time, would likely "snitch" on Roland, and tell law enforcement that Roland had ordered the robbery of Stewart which set in motion the murder.   Such conduct aimed at interfering with the judicial process warrants an anonymous jury.   *United States v. Quinones*, 511 F.3d 289, 295 (2d Cir. 2007) ("Indictment specifically charged defendants with murdering a confidential informant in retaliation for his cooperation with law enforcement authorities.").

This silencing of a potential adverse witness demonstrates Roland's ability to interfere with the judicial process.   Courts have repeatedly rejected any argument that harm to a potential witness does not equate to potential jury tampering.   *See United States v. Prado*, 2011 WL 3472509 at *3 (E.D.N.Y., Aug. 5, 2011) ("Notably, to support a finding that an anonymous jury is warranted, obstruction of justice charges need not relate to prior jury tampering efforts, but instead may relate solely to efforts to tamper with witnesses or otherwise obstruct the judicial process."); *United States v. Blackshear*, 313 F.App'x 338, 343 (2d Cir. 2008) (finding that "[i]t does not seem unreasonable to infer that jurors might also be threatened" by defendant previously found to intimidate potential witnesses").

**C. Means To Harm The Jury**

That the defendant is incarcerated, and he himself might not be able to physically tamper with the jurors, is not what has guided courts in making an anonymous jury decision.   *See United States v. Pugh*, Crim. No. 15-116

12

(NGG), 2015 WL 8481877 (E.D.N.Y. December 9, 2015).   *Pugh* involved a young man charged with attempting to provide material support to the Islamic State of Iraq and the Levant ("ISIL"), a terrorist organization.   The Government sought an anonymous jury and a limited sequestration because the defendant, who had not committed any violent act, nevertheless "has shown a potential for politically motivated violence targeted against American interests."   *Id.* at *3.   The defendant argued "under the facts proffered by the Government, it would be mere speculation to conclude that Pugh somehow poses a threat to the jury."   *Id.*

Judge Garaufis held that an anonymous jury was appropriate and that: "defendant's argument misses the mark.   The question is not whether Defendant *himself* poses a threat to the jury, but rather whether there is good reason to believe the jury needs protection."   *Id.* at *4 (citing *United States v. Stewart*, 590 F.3d 93, 123 (2d Cir. 2009)) (emphasis added).[5]

_____

[5] Just in the last year, in addition to the court in *Pugh*, several courts in the Eastern District of New York have granted anonymous juries and limited sequestration.   *See United States v. Dervishaj*, Crim. No. 13-668 (ENV), 2015 WL 3794803 (E.D.N.Y. June 14, 2015) (extortion by pecuniary gain and firearms charges); *United States v. Rivera*, Crim. No. 13-149 (KAM), 2015 WL 630242 (E.D.N.Y. February 13, 2015) (RICO conspiracy and murder-in-aid-of racketeering); *United States v. Hasbajrami*, Crim. No. 11-623 (JG), Dkt. No. 130 (E.D.N.Y. June 16, 2015) (providing material support to a terrorist organization).   These recent cases follow the consistent granting of anonymous juries in violent crime cases.   *See United v. Taylor*, 17 F.Supp.3d 162 (E.D.N.Y. 2014) (drug trafficking and murder charges); *United States v. Herron*, 2 F.Supp.3d 391 (E.D.N.Y. 2014) (RICO conspiracy involving murder and other violent crimes); *United States v. Mayes*, Crim. No. 12-385, 2013 WL 6175824 (E.D.N.Y. Jan. 11, 2013) (RICO conspiracy with numerous acts of violence); *United States v. Wilson*, Crim. No. 04-1016, 2013 WL 1091661 (NGG) (E.D.N.Y.

13

The South Side Cartel has many members and associates, and the defendant has associations with members of other gangs in Newark, including family members, who are not incarcerated and still live in Newark, who could potentially assist him in interfering with the trial process.   Any argument that he himself cannot facilitate jury tampering should be rejected and ignores the reality of prior gang cases in this district where such interference happened despite the defendant being incarcerated.[6]

**D. The Jury's Objective Fear of Retaliation**

Even in the absence of the potential for active jury tampering by the defendant or his associates, there is a substantial risk that the evidence of violence that the jury will hear in this case would cause the sort of general fear of retaliation that would interfere with the jury's ability to deliberate impartially.   The jurors, after hearing evidence of these violent acts, could conclude that they would be in danger because their identities are known. Indeed, they could feel constrained to return a verdict based upon their fears, rather than the neutral deliberation that both parties desire.   *See United*

---

March 15, 2013) (death penalty case involving murders of police officers).

[6] For example, in *United States v. Curry*, Crim. No. 04-280 (D.N.J.) law enforcement uncovered an active plot to kill the Government's cooperating witness after the jury had been selected.   In *United States v. Bergrin*, Crim. No. 09-369 (D.N.J.) ("Bergrin I"), an associate of the defendant was arrested during jury selection by the United States Marshals Service.   Deputy United States Marshals found that the associate recovered from his person hand-written notes containing information that he had learned about jurors during jury selection.   The associate also admitted that he was going to pass on this information to defense investigators, presumably in an attempt to learn the

*States v. Barnes*, 604 F.2d 121, 134-141 (2d Cir. 1979) (While the court found no specific threat to any juror had been made, the "suggestion of disruption was manifest," based on the defendants "sordid history" of violence and thus, "precaution was best taken so that fears would not become realities.").

For instance, in *United States v. Gotti*, 777 F. Supp. 224 (E.D.N.Y. 1991), the district court ordered that the jury be selected anonymously and that the jury be sequestered.   In determining that there was a need for an anonymous jury, the district court stated:

> Jurors cannot be expected to gamble on what might befall them if a verdict of guilty is returned.   The ability of a jury to render a fair and impartial verdict may be adversely affected by even a general fear of retaliation, and a distinct possibility of a serious threat to the safety of jurors requires that precautionary measures be taken. *United States v. Thomas*, 757 F.2d 1359, 1364 (2d Cir. 1985).   The extensive publicity this case has garnered thus far (and is certain to attract during each day of trial until a verdict is returned) is another factor requiring an anonymous jury.

*Id.*

Likewise, in *Scarfo*, the Third Circuit upheld the district court's decision to empanel an anonymous jury because the anonymity would allay the jurors' fears and promote an impartial, dispassionate jury verdict.   *Scarfo*, 850 F.2d at 1023.   The Court stated:

> Even in routine criminal cases, venire men are often uncomfortable with disclosure of their names and addresses to a defendant. The need for such information in preparing an effective defense is not always self-evident. . . . Jury anonymity promotes impartial decision making . . . Because the [jury] system contemplates that jurors will inconspicuously fade back into the community once

identity of the anonymous jurors and engage in jury tampering.

their tenure is completed, anonymity would seem entirely consistent with, rather than anathema to, the jury concept. In short, we believe that the probable merits of the anonymous jury procedure are worthy, not of a presumption of irregularity, but of disinterested appraisal by the courts.

The integrity of a jury is paramount in any trial.   For a fair trial to be accorded to all the parties, a jury must, at a minimum, be secure and free of threats of reprisal.   Given the backdrop of this case, and the actions of the defendant, including five capital-eligible murders and countless acts of violence alleged in the Second Superseding Indictment, the only way to ensure an untainted jury, free from the constant fear of reprisal or intimidation, is to empanel an anonymous and partially sequestered jury.

## E. Publicity

This case is likely to garner substantial media attention. The subject matter, a violent Newark-based gang, and the potential for a death penalty sentence, contribute to the uniqueness of the case and thus its newsworthiness.   Factoring in that this is only the second time in history that a death penalty case will be tried in this District, and the first to be tried in the Newark vicinage, publicity is likely, especially in light of the articles that have already been written concerning this case.   *See, e.g.*, "Judge dismisses defense attorney in rare federal death penalty case," NJ.com, March 2, 2016; "Feds seeking death penalty for leader of Newark street gang," NJ.com, and similar articles published at NBC.com, WSJ.com, Foxnews.com and numerous other sources, Feb. 9. 2015; "'Reign of terror' over: Feds announce indictment of last

members of violent Newark gang," NJ.com, June 6, 2013.

Findings that media interest in a particular case "may raise an apprehension among the jurors" have been found to be a valid factor for empaneling an anonymous jury. *United States v. Walker*, 392 Fed. Appx. 919 (3d Cir. 2010). The Second Circuit has upheld a District Court's finding that the possibility of significant media attention, "even though only one article had been written prior to the trial, since the article was [in a major newspaper] cover story that gave details of the case." *United States v. Vario*, 943 F.2d 236, 240 (2d Cir. 1991).

## V.   **PROTECTING THE IDENTITY OF JURORS WILL NOT DEPRIVE DEFENDANT OF INFORMATION NEEDED TO EXERCISE HIS PEREMPTORY CHALLENGES.**

Empaneling an anonymous jury does not infringe on a defendant's right to a fair trial, because "the practice of withholding jurors' names, addresses and places of employment does not deprive the defense of the information it needs to conduct an effective *voir dire* and exercise its peremptory challenges." *Stewart*, 325 F. Supp.2d at 499 (citing *Scarfo*, 850 F.2d at 1022); *see also Eufrasio*, 935 F.2d at 574 (analyzing *Scarfo*).

Other courts have approved the use of anonymous juries to safeguard the integrity of the judicial process and to provide safety for the jurors. In granting the Government's motion for an anonymous and sequestered jury, the district court in *United States v. Edmond*, 730 F. Supp. 1144 (D.D.C. 1990) observed that:

> a court deciding whether to empanel an anonymous jury must balance,
> on the one hand, the interests of the criminal justice system --
> protecting the jurors and their families from violence, actual or
> threatened, and shielding the jurors from the potential taint of extensive
> pre-trial publicity -- and, on the other hand, the defendants' interests --
> conducting a meaningful *voir dire* to permit the intelligent exercise of
> their peremptory challenges and retaining their presumption of
> innocence.

730 F. Supp. at 1145 (citing *Tutino*, 883 F.2d at 1132-33; *Scarfo*, 850 F.2d at

1022-23; and *Thomas*, 757 F.2d at 1362-65 and n. 1).   Even though an

anonymous venire does limit the permissible areas of inquiry somewhat, such

a limitation does not constitute a denial of the right to an intelligent

exploration of the thoughts and attitudes of potential jurors.   *See Scarfo*, 850

F.2d at 1022; *Barnes*, 604 F.2d at 142; *Thomas*, 757 F.2d at 1364.

Indeed, an anonymous jury is not unfairly prejudicial to the defendant.

Empaneling an anonymous jury "is not intrinsically suggestive of any

inference of guilt."   *Scarfo*, 850 F.2d at 1026.   "If measures are taken to

inform a defendant of jury demographics and to permit ample *voir dire*, an

anonymous jury need not impair a defendant's right to intelligently exercise

peremptory challenges."   *United States v. Eufrasio*, 935 F.2d 553, 574 (3d Cir.

1991); *Scarfo*, 850 F.2d at 1022-23.   Any concerns that a jury may have the

impression that a defendant is dangerous or guilty can be corrected through

"careful instructions to the jurors that keeping their identity confidential [has]

no bearing on the evidence or arguments in this case."   *Thornton*, 1 F.3d at

154. [7]

A criminal defendant is, of course, constitutionally entitled to a fair and impartial jury.   A sequestered and anonymous jury is entirely consistent with, not antithetical to, impartiality.   In *Barnes*, the court stated:

> If a juror feels that he and his family may be subjected to violence or death at the hands of a defendant or his friends, how can his judgment be as free and impartial as the Constitution requires?   If 'the anonymous juror feels less pressure' as the result of anonymity, this is as it should be - a factor contributing to his impartiality.

*Barnes*, 604 F.2d at 141 (citations omitted); *see also Scarfo*, 850 F.2d at 1026 ("If . . . anonymity dispels apprehension, it serves the ideal of dispassionate judgment.").

In fact, in *Scarfo*, the Third Circuit dismissed as "suspect" the defense's assumption that an anti-defendant bias on the part of the jurors is the only possible, or even the most likely, reaction to anonymity: "Predicting juror

---

[7] The instruction given by the Hon. Joel A. Pisano, used in *United States v. Baskerville*, Crim. No. 03-836, the only other death penalty case tried in this District, provides an example: "The court is following the practice used in other cases in the federal courts of keeping the identities of the jurors confidential. The answers to the questions on page 1 [of the juror questionnaire] will be disclosed to court personnel only and will not be made available to the prosecutors, the defendant or the defendant's attorneys.   What that means is that no one, not the media, the public, the parties to the case, the lawyers, or anyone else, other than the Clerk of the Court, will have any of the identifying information about you that you provide on page 1 of the questionnaire. The reason for keeping the identities of the jurors confidential is that this case might attract attention in the media and among the public.   The court wishes to make sure that jurors will not be subjected to prying into their personal affairs and will not be exposed to opinions, inquiries, comments, or suggestions by anyone who might improperly influence them in any way or affect their ability to sit as fair and impartial jurors in this case."

responses to the anonymity practice is pure speculation. A juror who fears a defendant's retaliation might be more apt to return a guilty verdict despite such fears rather than because of them." *Scarfo,* 850 F.2d at 1026 (footnote omitted); *see also United States v. Branch,* 91 F.3d 699, 725 (5th Cir. 1996) (rejecting defendants' objection to an anonymous jury based on the "speculative inference that the jurors were more likely to render a guilty verdict because of their belief that the defendants were dangerous").

The Court is well equipped to reinforce the defendant's right to the presumption of innocence and protect him from any potentially adverse inferences arising out of juror anonymity or enhanced security procedures by providing the jury with an appropriate cautionary instruction. *See Scarfo,* 850 F.2d at 1026-28.

In addition to a neutral instruction, the use of an extensive juror questionnaire and individual *voir dire* are two additional protective measures that have been cited repeatedly to insure the defendant is not prejudiced by selection of an anonymous jury. *See, e.g., Basciano,* 2011 WL 167578, Crim. No. 05-060 (E.D.N.Y. Jan. 19, 2011) at *5 ("Through the questionnaire and the individual questioning, the parties will be apprised of all relevant information concerning each potential juror, despite the fact that the name, address, and place of employment of jurors will not be disclosed. This process will ensure the Defendant has a meaningful opportunity to conduct *voir dire* and make informed choices during jury selection"); *Prado,* 2011 WL 3472509,

at *5 ("reasonable precautions" include "extensively questioning jurors during *voir dire* to explore prospective jurors' biases and providing the jurors with a neutral explanation for the anonymity that does not negatively implicate the defendants").

In *Scarfo*, the Third Circuit, in light of the breadth of the written questionnaire and individual *voir dire*, agreed with the district court's conclusion that "counsel were in a much better position to assess the suitability of prospective jurors in this case than in most other trials, criminal or civil." *Scarfo*, 850 F.2d at 1022-23.

## VI. ENHANCED JUROR SECURITY IS NOT CONTRARY TO THE PRESUMPTION OF INNOCENCE.

The courts of appeal have long recognized that trial courts have wide discretion in maintaining courtroom security and in protecting the judicial process from external influences.   See, e.g., *Eufrasio*, 935 F.2d at 574; *Scarfo*, 850 F.2d at 1024.   Thus, the appellate courts have sanctioned the use of metal detectors outside the doors of the courtroom in which a defendant is being tried, *United States v. Carter*, 815 F.2d 1230, 1231-32 (8th Cir. 1987), and the use of handcuffs and leg irons on inmate witnesses, *United States v. Amaro*, 816 F.2d 284, 285 (7th Cir. 1987), *cert. denied*, 481 U.S. 1031 (1987).[8]

---

[8] The Government will not address the need for further security in the courtroom as it believes any further security should be left to the discretion of

## VII.   **CONCLUSION**

In this case, given the violent history of the defendant, his associates, and the South Side Cartel, enhanced security for the jury is appropriate.   The dual purposes of safeguarding the jurors and protecting the integrity of the judicial process can best be achieved through the use of an anonymous jury and by adopting enhanced security procedures that protect the jurors from potential unlawful contact.   Further, neither the use of an anonymous jury nor the enhanced security procedures will infringe on the defendant's rights in any way.

WHEREFORE, the Government respectfully requests that the Court grant the Government's motion and enter an Order directing that the names, addresses and places of employment of the jurors and *voir dire* panel in this case not be disclosed to the parties, counsel, or the public, and requiring that the jurors be sequestered at lunch and recesses, and transported to and from court under the protection of the United States Marshal's Service.

Respectfully submitted,

PAUL J. FISHMAN
United States Attorney
District of New Jersey

Robert Frazer
Courtney A. Howard
*Assistant United States Attorneys*
Robert Feitel
*Special Assistant United States Attorney*

the Court and the United States Marshals Service.

## **CERTIFICATE OF SERVICE**

I hereby certify that this pleading was electronically filed, and thus served on this the 1st day of April, 2015, upon defense counsel:

Stephen Turano, Esq.
Richard Jasper, Esq.
Michael Bachrach, Esq.

Robert Frazer
Assistant United States Attorney