

                                **U.S. Department of Justice**
                                *Acting United States Attorney*
                                *District of New Jersey*

| | |
|---|---|
| *970 Broad Street, Suite 700* | *(973) 645-2700* |
| *Newark, New Jersey 07102* | |

June 10, 2017

**VIA ECF AND ELECTRONIC MAIL**
The Honorable Esther Salas
United States District Court
Martin Luther King, Jr. Federal Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    United States v. Farad Roland
                 Crim. No. 12-298 (ES)

Dear Judge Salas:

      The Government respectfully submits this letter with regard to the parties' oral arguments on June 9, 2017, regarding the Court's authority following the Supreme Court's decision in Moore v. Texas to consider evidence of either: Defendant's past criminal conduct (not charged in the Indictment), or Defendant's conduct while incarcerated, in ruling on whether Defendant had substantial deficits in adaptive functioning.

      It remains the Government's position that the holding in Moore v. Texas is limited to overruling Ex Parte Briseño and finding the so-called "Briseño factors" to be unconstitutional. 137 S. Ct. at 1044. Specifically, the holding in Moore was to rule that, although Atkins granted some leeway to the States in determining how to diagnose intellectual disability, that leeway was constrained by the diagnostic manuals which are relied upon by the medical community. Id. at 1048. Moreover, the Court was clear in its holding that, as those diagnostic manuals evolve over time, so, too, must the application of those diagnostic manuals. Id. at 1053 (noting that "current manuals offer 'the best available description of how mental disorders are expressed and can be recognized by trained clinicians'"). Put another way, Courts may not rely on a definition of mental retardation from 25 years ago as the applicable standard in an Atkins hearing in 2017.

      As argued during the Atkins hearing on June 9, 2017, there are two such diagnostic manuals: the DSM-5 and the AAIDD manual. While the Government acknowledges that the Supreme Court referred to both manuals in Moore, and recognizes that Your Honor may consider both manuals, the Government respectfully renews its argument from sidebar: as Dr. Hunter testified, the DSM-

5 is published by the American Psychological Association, a non-partisan, unbiased, organization whose mission is to ensure best practices by professional psychologists. The AAIDD manual, on the other hand, is published by the AAIDD, an organization which includes both psychologists and non-psychologists amongst its membership and which, among many other activities, advocates against the death penalty in *Amicus* briefs.

The Supreme Court has held that a Court's consideration of these diagnostic manuals does not prohibit the Court from considering other clinically-relevant information. Id. at 1048-49 (noting that the Court need not adhere to "everything stated in the latest medical guide," so long as it does not disregard the current, applicable standards) (citing Hall v. Florida, 134 S. Ct. 1986, 1995-98, 2000 (2014)). Indeed, the Court cannot rely solely strictly on the DSM-5 and the AAIDD.

As noted in greater detail below, the manuals contradict each other on the two issues currently before the Court. Given this contradiction, the Government respectfully submits that the Court should follow Moore, which noted that current diagnostic manuals are important because they give "the best available description of how mental disorders are expressed and can be recognized by trained clinicians." Id. at 1053 (citation omitted). Where the manual are incomplete or in conflict, the Court should turn to **trained clinicians** to bridge the gap.

Evidence of Criminal Adaptive Behavior

The admissibility of "criminal adaptive behavior,"[1] or evidence of past criminal conduct which shows abilities contrary to what the raters suggest, is one of those instances where the diagnostic manuals render incomplete guidance. The AAIDD would exclude this information *per se* whereas the DSM-5 is silent. Given the comparative bias between the documents' authors, the Government respectfully encourages the Court to follow Moore and consider the testimony of the clinical experts with respect to the "clinical standard" and the evaluation of "criminal adaptive behavior" as it relates to intellectual disability.

Thus far, the Court has heard from only one expert clinician – Dr. Hunter. The Government intends to offer the expert testimony of Drs. Morgan, Marcopulos, Denney, and Boone – all of whom are Board Certified Clinical Neuropsychologists, and all of whom have extensive clinical practices. The Government anticipates that Defendant will call expert witnesses in rebuttal whose opinion the Court may also wish to consider on this topic. As such, the Government respectfully submits that the Court will not be in a position to rule

---

[1] To be clear, the Government is not offering this as propensity evidence. Indeed, the fact that Defendant's acts constituted a violation of the law is irrelevant – this evidence is being offered to prove that Defendant could, indeed, perform the acts described.

on what the clinical standard is for considering evidence of "criminal adaptive behavior" until the court has heard testimony from, and weighed the credibility of, all of the clinical experts.

Furthermore, even though Moore held that the Briseño factors were unconstitutional, it did not overrule every prior case that has considered criminal adaptive behavior as part of a holistic consideration of Defendant's strengths and deficits.[2]  See, e.g., United States v. Candelario-Santana, 916 F. Supp. 2d 191, 193 (D.P.R. 2013); United States v. Bourgeois, 2011 WL 1930684 (S.D. Tex. May 19, 2011), certificate of appealability denied by 537 Fed. Appx. 604 (5th Cir. 2013), cert. denied 135 S. Ct. 46 (2014).  Accordingly, the Government respectfully submits that Your Honor can, and should, admit and give whatever weight the Court deems appropriate to Defendant's criminal adaptive behavior.

Evidence Obtained During Defendant's Incarceration

The admissibility of evidence taken from a time when Defendant was incarcerated is another instance where the diagnostic assessments disagree. The AAIDD would exclude this evidence *per se.*  The DSM-5 authorizes consideration of this information with a caveat: "Adaptive functioning **may** be difficult to assess in a controlled setting (e.g., prisons, detention centers); if possible, corroborative information reflecting functioning outside those settings should be obtained."  DSM-5, at 38 (emphasis added).

It is the Government's position that the correct interpretation of this language is: where particular adaptive behavior is benefitting from specific supports in a controlled setting, the Court should consider the degree to which those supports are accounting for the Defendant's ability to perform that function and inquire as to whether corroboration exists to support the assertion that he could perform that function in the outside world.[3]

Even if the Court disagrees with the Government's plain language interpretation of the DSM-5, the Government's evidence goes to abilities which are not supported by the controlled setting.  Defendant's communications demonstrate executive functioning and complex thinking that are inconsistent with significant deficits in adaptive functioning.  The fact that Defendant's

---

[2]The Government is aware that both DSM-5 and AAIDD limit the intellectual disability determination to a consideration of Defendant's deficits, and is not asking the Court to find otherwise.  Nevertheless, evidence that the Defendant could perform a particular function in prison is relevant to impeach a rater's statement that Defendant could not perform the function, so long as the function was not specifically supported by the structured environment.

[3]As noted above, the DSM-5 is silent as to whether that corroborative information can be gleaned from Defendant's criminal adaptive functioning, and the Government respectfully submits that the Court can rely upon the expert clinicians on that point.

3

statements, letters, and telephone calls happened while he was in jail is irrelevant because the thought processes that they demonstrate are not supported by the structured environment of prison. Finally, the Vineland-3 that was completed by Ms. Whitehead corroborates the evidence obtained during Defendant's incarceration.

Government's Proposed Resolution

In consideration of the above, and in the interest of avoiding repetitive objections and sidebars and preventing unnecessary delay, the Government respectfully recommends the following:

(1) Defense Exhibit 9 – The Court has already received Defendant's criminal history as a juvenile, as well as statements by him regarding those crimes, on Defendant's motion. The Government submits that it should be allowed to use this exhibit in its examination of witnesses.

(2) Government's Exhibit 252 – This is the photograph of Defendant holding a sum of money which undersigned counsel placed on the projector on June 9, 2017. The Government will offer this exhibit into evidence, but will not use it during its examination of any witness.

(3) Government's Exhibit 253 – This is the transcript of Malik Lowery's plea hearing, during which Lowery describes Defendant's criminal conduct. The Government will offer this exhibit into evidence, but will not use this exhibit with any witness.

(4) Government's Exhibit 254 – This is a Memorandum prepared by Dr. Marcopulos following a conversation with Lt. Sean Ascione of the New Jersey Department of Corrections. Lt. Ascione's interactions with Defendant, and his understanding of Defendant's gang affiliation and leadership position, directly contradict the raters' statements that Defendant was a follower. While this interaction occurred during the time period of the conspiracy, this interaction is not charged conduct, and Defendant had not been charged in this case in 2010. As such, any reputation he had regarding gang affiliation and leadership was independent of the indictment in this case. That reputation is relevant to the Court's consideration of how Defendant was viewed by people in his community environment, and may be considered by the Court. The Government will offer this exhibit into evidence. Drs. Morgan and Marcopulos may testify regarding Lt.

4

      Ascione's interaction with Defendant, but they will not use the Memorandum itself.

(5) <u>Exhibits Obtained From NJDOC and BOP</u> – Pursuant to a stipulation between the parties, the Court has already received a number of exhibits relating to Defendant's incarceration into evidence, to include: records of the NJDOC and BOP; Defendant's written and telephonic correspondence from jail; and Defendant's interview with the Hillside Police Department, among others. The Government will utilize some, but not all, of that evidence during its case-in-chief.

The Government notes that Defendant objects to all of the evidence set forth above, save for Defense Exhibit 9 which was admitted on his motion, and asks that the record reflect a single, running, objection to its admission. This will allow for an efficient examination of the remaining witnesses. Your Honor may then consider all of the evidence, and rule on admissibility after the Court has had an opportunity to hear testimony from the Government's expert clinicians.

                                        Respectfully Submitted,

                                        WILLIAM E. FITZPATRICK
                                        Acting United States Attorney

                        By:    <u>/s/ *James B. Nelson*</u>
                               JAMES B. NELSON
                              *Special Assistant U.S. Attorney*
                              ROBERT L. FRAZER
                              *Assistant U.S. Attorney*

cc:        Stephen Turano, Esq. (by email)
           Richard Jasper, Esq. (by email)
           Michael Bachrach, Esq. (by email)
           Susan K. Marcus, Esq. (by email)