LAW OFFICE OF

# MICHAEL K. BACHRACH

276 FIFTH AVENUE, SUITE 501
NEW YORK, N.Y. 10001
--------------
TEL. (212) 929-0592 • FAX. (866) 328-1630

MICHAEL K. BACHRACH *                                                    http://www.mbachlaw.com
* admitted in N.Y., MN and D.C.                                              michael@mbachlaw.com

August 7, 2017

By ECF and by email

The Honorable Esther Salas
United States District Court Judge
District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

*Re: United States v. Farad Roland,*
*Crim. No. 12-298 (ES)*

Dear Judge Salas:

The defense respectfully submits this letter in response to the Government's motion to strike (Doc. No. 438), dated, August 3, 2017 (hereinafter cited as, "the Government's motion" or "Gov't Mot.).  For the reasons that follow, the Government's motion should be dismissed in its entirety.

## I.    Introduction

The Government moves to strike paragraphs 171, 272, 245, 246, 248, 262, and 695, from Defendant's Proposed Finding of Fact and Conclusions of Law (Doc. No. 434), because they contain "facts outside of the record."  Gov't Mot. at 2, citing, United States ex rel. Shaw v. DeRobertis, 581 F.Supp. 1397, 1409 (N.D.Ill. 1984), aff'd sub nom., United States ex rel. Shaw v. De Robertis, 755 F.2d 1279 (7th Cir. 1985) (citing Branch v. Estelle, 631 F.2d 1229, 1234 (5th Cir. 1980), United States v. Davis, 532 F.2d 22, 28 (7th Cir. 1976).  The Government's argument is misplaced.  Indeed, patently frivolous.

## II.    The Government was on notice of every article and book cited in Paragraphs 171, 172, 245, 246, 248, and 262.

First and foremost, with the exception of Def. Ex. 98 (discussed in para. 695), for which the Government noted an objection in the parties' jointly-filed exhibit list, the Government was on notice of every article and book cited by the defense prior to the conclusion of the testimonial portion of the Atkins hearing.  Indeed, the Government was on notice of nearly every one of these

The Honorable Esther Salas
August 7, 2017
Page 2 of 6

items *prior to the start of the hearing* as well.[1]  Moreover, with the exception of Def. Ex. 98, *which was published only after the testimonial portion of the proceedings was complete*, each of these articles and books is in fact in the record – either as a specific exhibit, or referenced in the expert reports which themselves were entered into evidence as exhibits.

Taking the items in the order objected to by the Government:

Para. 171 cites Alan S. Kaufman, *Practice Effects*, in 2 ENCYCLOPEDIA OF HUMAN INTELLIGENCE 828, 828–33 (Robert J. Sternberg et al. eds., 1994).  **This article is cited and quoted in Dr. Hunter's Rebuttal Report, dated, May 22, 2017, at para. 9, which is in evidence as Def. Ex. 40 and Gov't Ex. 173.**  Notably, the article is cited in our proposed findings for the same principle as it was cited and quoted by Dr. Hunter.

Para. 172 cites Kaufman, A. S., & Lichtenberger, E. 0. (2006), Assessing adolescent and adult intelligence (3d ed.), New York: Wiley, pp. 165, 202, 204, 208.  **This book is cited in Dr. McGrew's Rebuttal Report, dated, May 23, 2017, at 17-18, which is in evidence as Def. Ex. 57 and Gov't Ex. 184.**  Notably, this book is cited and quoted in our proposed findings for the same principles that it was cited by Dr. McGrew.

Para. 245 cites Marc J. Tassé, *Adaptive Behavior Assessment and the Diagnosis of Mental Retardation in Capital Cases*, Applied Neuropsychology (February 2009).  **This article is in evidence as Def. Ex. 75.**  This article was also discussed during Dr. Greenspan's testimony. See Dr. Greenspan redirect, 6/14/17 Tr. 100-102.

Para. 246 cites to Marc J. Tassé, Robert L. Schalock, et al., *Construct of adaptive behavior*, Vol. 117, No. 4, 291–303, American Journal on Intellectual and Developmental Disabilities (2012).  **This article is in evidence as Def. Ex. 37a.**  This article was cited by Dr. Woods in his Rebuttal Report, dated, May 22, 2017 (at pages 10, 17), by Dr. Olley in his Rebuttal Report, dated, May 22, 2017 (at para. 16), and first by the Government's own expert, Dr. Morgan, in Dr. Morgan's affidavit in opposition to the Common Sense Questionnaire ("CSQ"), dated, May 1, 2017 (at paras. 5, 10 n.4, 13).[2]

Para. 248 cites to Greenspan, Loughlin & Black, *Credulity and gullibility in person with mental retardation*, which is a chapter in International Review of Research in Mental Retardation, Vo. 24, pp. 101-135, New York: Academic (L.M. Glidden, editor) (2001).  **This chapter is cited in Dr. Greenspan's CV, which is in evidence as part of Def. Ex. 40, Def. Ex. 52, and Gov't Ex. 181.**  This chapter is only cited by the defense as an example of the fact that Dr. Greenspan has "long argued that the victimization of people with ID, observed in social and economic

---

[1]  As is always the case, rebuttal exhibits were not required to be disclosed prior to the rebuttal case.  Similarly, the Government did not disclose many of its exhibits until the relevant defense witness was on cross.

[2]  Dr. Woods cites this article as being published in 2009, which is a typo.  The correct date is 2012.

exploitation, is a central problem in diagnosing ID." The fact that Dr. Greenspan has "long argued" this point is established by the fact that the chapter, published in 2001, in listed in his CV.

Para. 262 cites Marc J. Tassé, supra, *ID Definition and Diagnostic Criteria* at 13, which is a chapter in the book, The Death Penalty and Intellectual Disability (Polloway, editor) (2015). **The entire book, including this chapter, is in evidence Def. Ex. 39c.** Other specific chapters of this book are also in evidence as Gov't Ex. 311 ad Gov't Ex. 322.

Para. 262 also cites Marc J. Tassé, *Adaptive Behavior Assessment and the Diagnosis of Mental Retardation in Capital Cases*, Applied Neuropsychology (February 2009), **which, as previously stated, is in evidence as Def. Ex. 75.**

### III.   Although the article cited in paragraph 695 was not previously in the record, such is irrelevant since there is no proscription against citing to newly published authority.

Para. 695 cites LaDuke, Barr, Brodale & Rabin, *Toward generally accepted forensic assessment practices among clinical neuropsychologists: a survey of professional practice and common test use*, The Clinical Neuropsychologist (2017) (hereinafter, the "LaDuke article"). This article was marked for identification as Def. Ex. 98 in the parties jointly-submitted exhibit list.

The defense put the Government on notice that it would be citing to this article in its Proposed Findings of Fact and Conclusions of Law, and indeed this is the article to which the Government was referring when it "informally advised the Court that it objects to certain material that Defendant will be submitting as part of its post-hearing submission…." Order, dated, July 20, 2017 (Doc. No. 431). The Government's objections to this article are nonetheless misplaced.

The Government's objection to the LaDuke article is based upon the misplaced conclusion that it is a "*fact[]* outside of the record" (emphasis added). Unlike the other articles and books objected to by the Government, the Government is correct that the LaDuke article was not previously part of the record. The flaw in the Government's objection, however, is that an article is a source of *authority*, but it is not a *fact*. As such, the cases cited by the Government do not apply. Defense counsel is unaware of a single case that has ever held that an article or book cannot be cited in a post-hearing submission. Indeed, they are cited regularly. Obviously, none of the articles and books subject to the Government's objection are *binding* authority. However, there can be no legitimate dispute that they are *non-binding* authority that this Court may give whatever weight Your Honor believes appropriate. See, e.g., Herring v. Teradyne, 256 F.Supp.2d 1118, 1126 (S.D.Cal. 2002) (referring to treatises and articles as non-binding authorities), rev'd on other grounds, 242 Fed.Appx. 469 (9th Cir. 2007).

Furthermore, the LaDuke article was published on July 4, 2017, exactly one week after the testimonial portion of the hearing was complete and five days after closing arguments. As such, reliance on the article now is certainly not something that could have been foreseen prior to the completion of the hearing, nor could the article have been previously offered into evidence or cited by an expert. But that does not mean that the article cannot be cited as *authority* in support of

The Honorable Esther Salas
August 7, 2017
Page 4 of 6

Defendant's Proposed Findings of Fact and Conclusions of Law.  The Government certainly could not argue that the defense is foreclosed from bringing to the Court's attention legal decisions issued after the hearing is complete, and the only difference between citing to a legal decision as authority versus citing to an article as authority, is that a legal decision carries more weight – but the propriety of citing to either is the same.

Indeed, as Mr. Nelson stated in response to this Court's inquiry at the conclusion of the parties' closing arguments, "I think our position would be that the articles, at least from my perspective, the articles were offered to demonstrate that the witnesses weren't just sort of making this up as they went along, that this is actually the science.  I don't know that there is any basis for, in a criminal case, that scientific articles are the law, but *support for the testimony*.  I think the testimony is the most critical point." 6/29/17 Tr. 212 (emphasis added).  We agree, and the LaDuke article is offered for nothing more than as "support for the testimony," specifically, in support of the propriety of Dr. Greenspan's employment of the structured interview that he refers to as the Common Sense Questionnaire.

**IV.     The Government is not unduly prejudiced by the defendant's citations to authority.**

Even assuming *arguendo* that the Government's objections had not been so wantonly misplaced, the Government still would not suffer prejudice by the defendant's citations to *authority* in its Proposed Findings of Fact and Conclusions of law, since the Government has an opportunity to respond to those citations in the Government's responsive submission due later today, August 7, 2017.

Similarly, the Government's claim that the hearing needs to be re-opened in order to respond is absurd, and their reliance on Kansas v. Cheever, 134 S.Ct. 596, 598-601 (2013), entirely misplaced.  First, one cannot cross-examine an article.  Second, even had the article been published in time for the defense to question one of the defense rebuttal witnesses about the article, the Government still would not have been permitted to call a sur-rebuttal witness as a final response, as this Court had ruled that the defense, as the party with the burden of proof, was permitted to go last.  See 6/12/17 Tr. 156.  Third, the introduction of the article does not create a new argument not previously advanced by the defense.

The Government has already thoroughly briefed its objections to the CSQ, see Gov't Motion to Exclude Testimony Regarding the "Common Sense Questionnaire" from the Atkins Hearing, or, in the alternative, for a Daubert Hearing, dated, May 1, 2017 (Doc. No. 328), and the defense has thoroughly briefed its response, see Response in Opposition, dated, May 10, 2017 (Doc. No. 337), including our position that there is nothing inappropriate about employing a structured interview, which is all the CSQ is.  Indeed, the parties had oral argument on this issue as well.  See, generally, Oral argument, 6/5/17 Tr. 34-35, 40-43, 59-60.  Moreover, Dr. Greenspan testified during the defense case-in-chief to his position that the CSQ is nothing more than a structured interview and that structured interviews are perfectly appropriate, see Dr. Greenspan direct, 6/13/17 Tr. 26-27, and the Government thoroughly cross-examined him on that issue, see Dr. Greenspan cross, 6/14/17 Tr. 37-44.

The Honorable Esther Salas
August 7, 2017
Page 5 of 6

In Cheever the Supreme Court held, "When a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also examined him." Cheever, 134 S.Ct. at 601.  The evidence involved in Cheever, however, was the *statements* made by the defendant to the Government's expert witness (Dr. Michael Welner), as well as Dr. Welner's expert opinion based on those statements, as a result of the defense introducing the statements made by the defendant on a separate occasion to the defendant's expert witness (Dr. Roswell Lee Evans), and Dr. Evans's opinion based on those separate statements.  The legal issue was whether the defendant's Fifth Amendment right to remain silent would be violated if the statements made to Dr. Welner were introduced at trial.  The statements made to Dr. Welner were made during a court-ordered psychiatric exam that occurred in a Federal case proceeding against Cheever, which had been conducted without the defendant's consent, whereas the statements made to Dr. Evans were made voluntarily in a separate State case during a defense-initiated evaluation utilized for a different defense than had been advanced in the Federal case.  The Supreme Court held that the Fifth Amendment was not violated because the statements and expert opinion based thereon directly rebutted the statements and expert opinion introduced by the defense.  ***None of this is applicable to Mr. Roland's case.***

The LaDuke article is not remotely analogous to the statements (and opinion based thereon) that was at issue in Cheever.  Moreover, our citation to the LaDuke article does not introduce new *evidence* (or a new *defense*), as occurred in Cheever, our citation to the LaDuke article merely introduces newly published *authority* that supports a position that we previously advanced in writing, through testimony, and during oral argument.

Additionally, the Government's accusation that the defense is "litigat[ing] by surprise" (Gov't Mot. at 1) is, quite frankly, out of line.  The defense provided the Government with notice of our intention to cite the LaDuke article shortly after we became aware of it, immediately after we decided to rely upon it, and *prior to* including it in our Proposed Findings of Fact and Conclusions of Law.  As a result, the Government had a timely opportunity to review the article in advance of our submission and ample opportunity to prepare a response.  The Government therefore had advance notice of ***all*** of the articles and chapters cited in the defendant's Proposed Findings of Fact and Conclusions of Law, including the LaDuke article.  The fact that we marked the article for identification as Def. Ex. 98 in the jointly-submitted exhibit list, and gave the Government an opportunity to note its objection, does not transform the article into something more than it is.  Like all of the articles marked as exhibits by both parties, the LaDuke article was intended "as support for the testimony," but not as a "fact" in the legal sense of the term that could take precedence above the testimony that it is supporting.[3]

---

[3]     The DSM-5, the AAIDD-11, and the AAIDD User's Guide, carry additional weight provided them by the Supreme Court in Atkins v. Virginia, 536 U.S. 304, 308 n.3, 317 n.22 (2002), Hall v. Florida, 134 S.Ct. 1986, 1990-91, 1993-96 (2014), and Moore v. Texas, 137 S.Ct. 1039, 1053 (2017) – each case cited those books, or the then-current versions of them, as specifically representative of the clinical standard that courts must follow.

The Honorable Esther Salas
August 7, 2017
Page 6 of 6

Finally, the Government still has the opportunity to respond to the entirety of paragraph 695, including the citation to the LaDuke article, in its responsive submission due later today, August 7, 2017.  As such, for all of these reasons, the Government's claims of surprise and prejudice could not be further from the truth; and the same is also the case with respect to all of the other articles and books discussed herein.

**V.    <u>Conclusion</u>**

Accordingly, for all of the reasons discussed herein, Defendant Farad Roland, by and through counsel, respectfully submits that the Government's motion to strike should be dismissed in its entirety.

Respectfully submitted,

/S/ Michael K. Bachrach
/S/ Susan K. Marcus
/S/ Richard Jasper
/S/ Stephen Turano
*Attorneys for Defendant Farad Roland*

cc:    All parties of record (by ECF and email)